**Rosario GALLO–ALVAREZ, Petitioner–Appellee,**

v.

**John ASHCROFT,\* Attorney General, Respondent.**

**Rosario Gallo–Alvarez, Petitioner–Appellee–Cross–Appellant,**

v.

**Robert C. Eddy; Doris Meissner; John Ashcroft,\*\* Respondents–Appellants–Cross–Appellees.**

**Nos. 99–71038, 00–35238 and 00–35289.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 7, 2001

Filed Sept. 21, 2001

---

**5.** *See* note 2.

**6.** *See* note 2.

\* John Ashcroft, Attorney General of the United States, is substituted for his predecessor Janet Reno. Fed. R.App. P. 43(c)(2).

\*\* John Ashcroft, Attorney General of the United States, is substituted for his predecessor

Janet Reno. Fed. R.App. P. 43(c)(2).

Alice E. Loughram, Papu Sandhu, Office of Immigration Litigation, United States Department of Justice, for the respondents-appellants-cross-appellees.

Margaret D. Stock, Jeffrey Scott Moeller, Anchorage, Alaska, for the petitioner-appellee-cross-appellant.

Before: PREGERSON, THOMAS and GOULD, Circuit Judges.

THOMAS, Circuit Judge:

This consolidated case presents the question of whether 8 U.S.C. § 1231(a)(5) permits the Immigration and Naturalization Service ("INS"), to reinstate an order of deportation summarily pertaining to an alien who was granted voluntary departure in lieu of deportation. We hold that the statute allows the INS to do so, but that the record in this instance is insufficient to determine whether § 1231 applies to the petitioner. Thus, we remand the appeal and transfer the petition for review to the district court for evidentiary resolution of the relevant issues. Given this result, we do not reach the question as to the constitutionality of the reinstatement provision.

## I

Rosario Gallo–Alvarez ("Gallo") was born in Jalisco, Mexico in 1951. He entered the United States illegally in 1972, and has been in this country more or less continuously since that time, working at a series of restaurants. In 1974, the INS apprehended Gallo after raiding the restaurant where he was working, and sent him back to Mexico. He returned approximately ten days later. Gallo was arrested in 1979 as he returned from a brief trip to Mexico and ultimately pleaded guilty to falsely claiming to be a United States citizen. He was sentenced to one year in prison, but his sentence was modified to time served and three years' probation. Following his release, Gallo left the United States, but returned two months later. Beginning in 1989, Gallo worked at his brother's restaurant in Anchorage, Alaska.

On October 27, 1992, Gallo was arrested in Anchorage while attempting to renew his driver's license. The INS served him with an Order to Show Cause, and an immigration judge ("IJ") denied Gallo suspension of deportation, but granted him sixty days in which to voluntarily depart.[1] In his oral decision, the IJ noted Gallo's intention to marry his girlfriend of four years, Maria Acevedo, a recently naturalized United States citizen, as soon as her divorce became final. The IJ declared himself unable to offer Gallo suspension of deportation in part because Gallo had alternate relief available through his planned marriage to Acevedo.

Gallo timely appealed the IJ's adverse decision to the Board of Immigration Appeals ("BIA"). Shortly after filing the appeal, Gallo and Acevedo married, and she filed a visa petition on his behalf. However, Gallo neglected to make a motion to reopen his deportation proceedings in order to raise the issue of his marriage to a United States citizen.

In January, 1997, while his appeal before the BIA was still pending, Gallo left for Mexico to visit his dying father. Although Gallo informed his lawyer of his intention to depart, his lawyer did not obtain approval from the INS. Furthermore, the attorney did not inform Gallo that his departure for Mexico would forfeit his appeal to the BIA. Although Gallo's father died before he could reach him, Gallo stayed in Mexico for a few months. It is unclear precisely when Gallo returned to the United States, but according to Acevedo, Gallo was back in Anchorage on or about June 12, 1997.

At a meeting with Alaska's INS District Director Robert Eddy shortly after returning from Mexico, Gallo told Eddy that he had reentered the United States with a border-crossing card that he had thrown away. Gallo claims that he tried to cross using a border-crossing card, but was rebuffed by border officials, and then crossed the border without inspection that same afternoon. Eddy informed Gallo that Gallo would have to pay the additional $1,000 fee in order to process his visa petition since he could not prove that he had legally reentered the country.

Eddy's version of events is different: he claims that he believed that Gallo's last entry into the United States had been legal. Eddy also told them that Gallo's attorney had "misfiled some of the paper-

---

**1.** Gallo was granted voluntary departure in June, 1993. Thus, his voluntary departure was governed by pre-IIRIRA provisions. Under IIRIRA, effective April 1, 1997, an alien can be granted voluntary departure in lieu of deportation proceedings under INA § 240B(a), codified at 8 U.S.C. § 1229(c). *See* 8 C.F.R. § 240.25. Voluntary departure as a form of alternative relief in deportation proceedings is governed by INA § 240B(b). 8 U.S.C. § 1229(c).

work." According to Acevedo, Eddy told them that there would be no further deportation proceedings, but that Gallo needed to provide the INS with proof that he had left the country, by sending a copy of the airline ticket. On September 11, 1997, at the INS's suggestion, Gallo filed another petition for adjustment of status because his first application was deemed abandoned when he left the country. In this petition, Gallo stated his arrival date as June 12, 1997.

On July 11, 1998, Gallo's attorney moved to withdraw his previous appeal to the BIA. In that motion, Gallo requested that the BIA enter an order granting him voluntary departure, due to the medical emergency that provoked Gallo's trip to Mexico. Gallo did not make a motion to reopen the proceedings. On September 21, 1998, the BIA acknowledged that the appeal had been withdrawn, and ordered that the record be returned to the immigration court without further action. In its order, the BIA noted that it was without jurisdiction to grant Gallo voluntary departure in view of the withdrawal.

On August 10, 1999, Gallo went to the INS office to renew his work authorization, on the suggestion of Eddy. There the INS served him with a Notice of Intent to Reinstate Prior Order. Gallo signed the order, and checked a box indicating that he did not wish to make a statement. Gallo was arrested on the spot and placed in custody.

## II

On August 23, 1999, Gallo then filed a petition for review in this court and a petition for a writ of habeas corpus in the district court for the District of Alaska. On January 3, 2000, the district court ruled on Gallo's petition for a writ of habeas corpus. In his petition for a writ, Gallo made several claims, including (1) § 1231(a)(5) did not apply to him; (2) ineffective assistance of counsel; and (3) estoppel by virtue of INS misconduct.

The district court found that it had jurisdiction over Gallo's ineffective assistance of counsel claim, as well as his claim of INS misconduct. However, it held that the INA's reinstatement provision, codified at 8 U.S.C. § 1231, did not apply to Gallo, rendering his due process claims moot. The district court found that it did not have jurisdiction over Gallo's claim for adjustment of status, and therefore dismissed the petition.

Just prior to appeal to this court, the INS released Gallo from custody. In addition, on August 16, 1999, the INS denied Gallo's application for adjustment of status.

## III

The threshold issue before us is whether this court has jurisdiction over either Gallo's direct appeal or his habeas appeal, or both. We find that as a result of the jurisdiction-saving transfer statute, 28 U.S.C. § 1631, we have jurisdiction over the claims raised by Gallo in this court as well as those raised in the district court.

■ While Gallo's appeals were pending in this court, we held that § 242 of the Immigration and Nationality Act ("INA") authorizes direct review by the courts of appeals of reinstatement orders under 8 U.S.C. § 1231(a)(5). *Castro–Cortez v. INS*, 239 F.3d 1037, 1043–44 (9th Cir. 2001). Therefore, we have jurisdiction over Gallo's petition for review. In *Castro–Cortez* we noted the necessary implication of this holding, namely that, absent exhaustion, "[t]he district court was not authorized to hear these petitions under § 2241, [its habeas jurisdiction], because direct review was available." *Id.* at 1047.

██ Nevertheless, *Castro–Cortez* noted that in cases where it is unclear which court possesses jurisdiction, the jurisdiction-saving transfer statute, 28 U.S.C. § 1631, may be invoked in order to preserve jurisdiction over claims incorrectly brought in a lower court. Gallo meets the conditions of the jurisdiction-saving transfer statute. 28 U.S.C. § 1631.[2] "The transfer statute authorizes us to transfer these cases to ourselves if: (1) we would have been able to exercise jurisdiction on the date that they were filed in the district court; (2) the district court lacked jurisdiction over the cases; and (3) the transfer is in the interest of justice." *Castro–Cortez*, 239 F.3d at 1046 (citation omitted).

Gallo filed his petition for habeas corpus on August 12, 1999–well within the 30–day limit for direct appeals from final deportation orders. 8 U.S.C. § 1252(b)(1). Due to the uncertain nature of jurisdiction in this area, *see Castro–Cortez*, 239 F.3d at 1046, Gallo's good faith error is understandable. Accordingly, it is in the interests of justice to transfer his claims to the court in which they could properly have been brought. *Id.* Moreover, Gallo was not required to exhaust any administrative remedies before seeking review in this court, because there are no viable administrative remedies to a reinstatement order. *Id.* at 1045. Therefore, by operation of transfer, Gallo's habeas claims are properly before this court.

## IV

Although we have jurisdiction over Gallo's claims, we reject his contention that because he voluntarily departed, he does not fall within the language of the INA's summary reinstatement provision, § 1231(a)(5).

Gallo's primary argument is that he was not subject to reinstatement of deportation, because he left pursuant to a grant of voluntary departure rather than a final order of deportation. That is, Gallo claims that he was never "deported." In contrast, the government claims that Gallo "self-deported" when he left the country without advance parole while his appeal was pending before the BIA.

██ We find it unnecessary to reach the issue of how to characterize Gallo's departure for Mexico in view of the fact that voluntary departure does not remove Gallo from the ambit of the reinstatement provision. Section 1231(a)(5) provides that:

> If the Attorney General finds that an alien has reentered the United States *illegally after* having been removed or *having departed voluntarily, under an order of removal,* the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed, the alien is not eligible and may not apply for any relief under this chapter, and the alien shall be removed under the prior order at any time after the reentry.

8 U.S.C. § 1231(a)(5) (emphasis added). By its plain language, § 1231(a)(5) applies to aliens who are granted voluntary departure[3] if they re-enter the United States

---

**2.** "Whenever a civil action ... including a petition for review of administrative action, is noticed for or filed with ... a court and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed or noticed, and the action or appeal shall

proceed as if it had been filed in or noticed for the court to which it is transferred on the date upon which it was actually filed in or noticed for the court in which it is transferred." 28 U.S.C. § 1631.

**3.** Although the provision refers to "removal," this also applies to orders of deportation. *Castro–Cortez*, 239 F.3d at 1050.

illegally. Furthermore, it applies to situations in which the predicate order of deportation was entered prior to the 1996 revisions of the immigration law. *See Mendez–Tapia v. Sonchik,* 998 F.Supp. 1105, 1108 (D.Ariz.1998) (finding no improper retroactive application under *Landgraf v. USI Film Prods.,* 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994)).

■ Against this background, the only possible way in which Gallo can escape reinstatement of deportation under § 1231(a)(5) is if he reentered the United States prior to April 1, 1997, or if he reentered the United States legally, in which case the provision does not apply. *Castro–Cortez,* 239 F.3d at 1050–51. On these points, the record contains contradictory references. In his affidavit, Gallo claims to have been in Mexico for "about a month and a half or two months." If Gallo did indeed stay for only two months, then he reentered the United States by the end of March, 1997, at the latest. However, there is evidence in the record that he may have arrived in Anchorage some time in June, 1997. The order of reinstatement against Gallo originally stated his date of entry as June 10, 1997, but this was later amended to say September 23, 1999–all of which is unexplained in the record. It is also unclear whether Gallo re-entered the United States illegally, although it is probable that he did. In short, there are crucial evidentiary issues that require resolution before a determination can be made as to whether § 1231 applies to Gallo. However, the defense that the section does not apply to him solely because he was under a voluntary departure order is not viable.

■ Of course, § 1231 does not apply to all aliens who voluntarily depart under the threat of deportation; it applies only to aliens who, like Gallo, actually received the benefit of formal deportation proceedings prior to their predicate deportation. *See* 8

U.S.C. § 1254(e) (repealed 1996). In other words, § 1231 does not apply to aliens who received voluntary departure under old INA § 242(b). Under that provision, codified at 8 U.S.C. 1252(b) (repealed 1996), an alien could receive voluntary departure by conceding deportability and waiving the right to formal deportation proceedings. This second form of voluntary departure is a "rough immigration equivalent to a guilty plea." *Contreras–Aragon v. INS,* 852 F.2d 1088, 1094 (9th Cir.1988) (internal quotation omitted). Aliens who depart voluntarily under this provision are not leaving "under an order of removal," and thus are not subject to reinstatement under 8 U.S.C. § 1231(a)(5).

Gallo also alleges, in the alternative, that the INS engaged in "deliberate lies" or a "pattern of false promises" that would equitably estop the INS from deporting him. *Mukherjee v. INS,* 793 F.2d 1006, 1009 (9th Cir.1986). Although his equitable estoppel claims have "some possible validity" and are therefore colorable, *Torres–Aguilar v. INS,* 246 F.3d 1267, 1271 (9th Cir. 2001), the record is insufficient for us to resolve this issue which is properly before the district court in the § 2241 habeas petition. *Sulit v. Schiltgen,* 213 F.3d 449, 453 (2000).

Because genuine issues of material fact remain, we transfer the consolidated cases to the district court pursuant to 28 U.S.C. § 2347(b)(3), which authorizes such a transfer when an agency has not held a hearing before taking the complained-of action, and "when a hearing is not required by law and a genuine issue of material fact is presented." *Id.; see also Reno v. Am.–Arab Anti–Discrimination Comm.,* 525 U.S. 471, 496–97 & n. 2, 119 S.Ct. 936, 142 L.Ed.2d 940 (Ginsburg, J., concurring) (noting the Attorney General's position that a court of appeals could transfer a

case to a district court for resolution of pertinent factual disputes).

We transfer Gallo's petition for review to the district court for further development of the record. Once this court has rendered a decision based on a complete factual record, the district court may then, if appropriate, consider any issues not cognizable on petition for review to this court that Gallo raised in his habeas petition, such as his ineffective assistance of counsel claim. Pending the disposition of the petition for review, however, the district court should stay consideration of Gallo's habeas claims.

Further, because the results of the factual inquiry may indicate that § 1231(a)(5) does not apply in this instance, we need not reach the question of whether the summary reinstatement provisions of the statute are unconstitutional.

**TRANSFERRED.**