In the

# United States Court of Appeals

### For the Seventh Circuit

Nos. 01-3068, 01-3454

RUBEN GOMEZ-CHAVEZ,

*Plaintiff-Appellant,*
*Petitioner-Appellant,*

*v.*

BRIAN PERRYMAN, DISTRICT DIRECTOR,

*Defendant-Appellee,*

*and*

IMMIGRATION AND NATURALIZATION SERVICE,

*Respondent-Appellee.*

Appeals from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 01-C-5768—**Suzanne B. Conlon**, *Judge.*

Petition to Review Decision of the
Immigration and Naturalization Service.
File No. A 75 897-228.

ARGUED JANUARY 24, 2002—DECIDED OCTOBER 24, 2002

Before EASTERBROOK, RIPPLE, and DIANE P. WOOD, *Circuit Judges.*

DIANE P. WOOD, *Circuit Judge.* Ruben Gomez-Chavez entered the United States illegally some time after he had been summarily removed from the country and ordered not to return for a period of five years. When the INS learned that he was back, it reinstated the earlier order of removal, which then triggered an even more streamlined new removal process. After some procedural confusion, we granted a stay of the new order pending the result of this appeal. We now affirm the decision of the district court.

**I**

Gomez-Chavez, a Mexican national, was detained on January 30, 1999, while attempting to enter the United States unlawfully with a fraudulent passport. He was placed in expedited removal proceedings pursuant to 8 U.S.C. § 1225(b)(1) and charged with being inadmissible as a noncitizen. In a proceeding that very day before immigration inspector Ernesto Aguirre, Gomez-Chavez was asked a number of questions to determine his identity, citizenship, and admissibility. (Apparently this took place in English; Gomez-Chavez was assisted by neither an interpreter nor an attorney.) He admitted all pertinent facts, including his identity and the manner in which he had procured the fraudulent passport. Specifically, he confessed that he had purchased a birth certificate and social security card in the name of Carmelo Hernandez for $800. He then used the documents to obtain a passport. On this basis, the INS found him ineligible for admission to the United States and barred him from entering without the Attorney General's consent for a period of five years. The removal was conducted pursuant to § 1225(b)(1), which permits immigration officers to order aliens removed without further hearings or review unless the alien indicates an intention to apply for asylum. Gomez-Chavez was de-

ported on that day, January 30, 1999, without ever receiving a full-blown administrative hearing.

These proceedings did not make much of an impression on him, because less than a month after his removal, Gomez-Chavez reentered the United States. He did so even though he had signed documents warning him that an unauthorized reentry would put him at risk of a criminal prosecution, and subsequent sentence of two to twenty years in prison and fines up to $250,000. On March 5, 1999, he married Sonia Martinez, a United States citizen. Two months later, Martinez filed a Form I-30 with the INS seeking to classify Gomez-Chavez as an immediate family member. At the same time, Martinez and Gomez-Chavez also filed a form I-485 application to adjust Gomez-Chavez's status to that of an alien lawfully admitted for permanent residence. Despite the existence of the January 30 removal order (about which it seemed to be unaware), on June 1, 1999, the INS issued an Employment Authorization Card to Gomez-Chavez and renewed the card twice, on April 20, 2000, and April 5, 2001.

On July 18, 2001, Gomez-Chavez and Martinez attended an interview conducted by the INS in conjunction with the application for adjustment of status. During the interview, the INS agent realized that Gomez-Chavez had reentered the country illegally. This led to the immediate reinstatement of the January 30 removal order, under the authority of 8 U.S.C. § 1231(a)(5), which reads as follows:

> If the Attorney General finds that an alien has reentered the United States illegally after having been removed . . . the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed, the alien is not eligible and may not apply for any relief under this chapter, and the alien shall be removed under the prior order at any time after the reentry.

Gomez-Chavez was released on July 19, 2001, and ordered to report back to the INS on August 2, 2001, for removal without a hearing pursuant to 8 C.F.R. § 241.8. It was at that point that he began the proceedings that have brought the case before us now, which we conclude were ineffective to avoid the current removal order.

## II

In order to clarify where this case presently stands, we must review its rather messy history from the time of the July 19, 2001, order of reinstatement forward. On July 25, 2001, Gomez-Chavez filed an I-212 application with the INS for permission to *reapply* for admission into the United States after removal. He also filed a complaint for mandamus and declaratory judgment in the district court. On August 8, 2001, the district court dismissed the complaint for lack of jurisdiction, on the ground that all challenges to removals belonged only in the court of appeals upon a timely petition for review. Gomez-Chavez then promptly filed a notice of appeal from that decision to this court, which was docketed on August 8, 2001, and assigned Case Number 01-3068. By order of August 9, 2001, we dismissed that appeal for lack of jurisdiction. When asked to clarify, we stated that the INS "decision dated July 18, 2001, constitutes a decision of the Attorney General to execute a removal order and therefore this court's jurisdiction is barred by 8 U.S.C. § 1252(g)."

Gomez-Chavez then returned to the district court, asking it to reconsider its decision in light of this court's ruling. At that time, he also filed a motion for leave to file a first amended complaint to add a habeas corpus claim. On August 21, 2001, the district court denied his motion to reconsider and on September 7, 2001, it denied his motion for leave to file a first amended complaint. This time,

when Gomez-Chavez filed his notice of appeal, we granted a stay of his deportation pending the results of this appeal.

Although the district court was clearly correct to reject Gomez-Chavez's efforts to proceed by way of mandamus, declaratory judgment, and habeas corpus, it was also correct earlier when it told Gomez-Chavez that his challenge to the INS's removal order belonged in this court. What should have happened then, in Appeal No. 01-3068, is an examination of the arguments Gomez-Chavez was making to see if he was really challenging only the removal order, or if his appeal raised issues not covered by § 1252(g). Although the 1996 Amendments generally foreclosed judicial review of deportation orders by way of habeas corpus in the district court, in certain cases aliens may petition the court of appeals directly for review of INS removal determinations. *LaGuerre v. Reno*, 164 F.3d 1035, 1038-40 (7th Cir. 1998). This is true even if, as in Gomez-Chavez's case, there was never a hearing before an immigration judge or the district court. *Id.* Thus, Gomez-Chavez was entitled to petition this court for review of the July 19 order reinstating the order of removal. We think that the best way to remedy this problem is to recall the mandate in No. 01-3068, and re-open that appeal. With respect to the present appeal, No. 01-3454, we affirm the district court's judgment.

## III

Although these steps bring the merits of Gomez-Chavez's appeal before us, we conclude that nothing he has presented entitles him to relief from the INS's order. Gomez-Chavez's primary claim is that the INS is now improperly refusing to adjudicate his I-212 application for waiver of inadmissibility. But this argument fits squarely within the steps covered by the prohibition on judicial review found in 8 U.S.C. § 1252(g). Under § 1252(g),

courts are barred from reviewing discretionary decisions to "commence proceedings, adjudicate cases, or execute removal orders." *Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999); *Chapinski v. Ziglar*, 278 F.3d 718, 721 (7th Cir. 2002); *Singh v. Reno*, 182 F.3d 504, 508-09 (7th Cir. 1999). These strict limitations apply not only to the Attorney General's positive actions, but also to his refusals to take action. *Alvidres-Reyes v. Reno*, 180 F.3d 199, 205 (5th Cir. 1999). An alien attempting to achieve judicial review of such discretionary measures may not avoid the § 1252(g) bar by the simple expedient of recharacterizing a claim as one challenging a refusal to act. *Cardoso v. Reno*, 216 F.3d 512, 516 (7th Cir. 2000).

Although § 1252(g) bars Gomez-Chavez from obtaining an order commanding the INS to adjust his status or precluding his removal, this does not mean that the courts have ceased to exist for cases in which a true miscarriage of justice may be occurring. *LaGuerre v. Reno*, 164 F.3d at 1040. For example, the Supreme Court held in *INS v. St. Cyr*, 533 U.S. 289 (2001), that the district courts continue to have jurisdiction under 28 U.S.C. § 2241 to entertain habeas corpus petitions based on pure questions of law. Furthermore, the observation in this court's decision in *Yang v. INS*, 109 F.3d 1185 (7th Cir. 1997), remains true: the review-preclusion provisions in the 1996 amendments to the immigration laws do not preclude the court of appeals from determining whether the alien is being removed for a permissible reason. Thus, the agency does not have the "final say on constitutional matters"; instead, that power rests with the courts. *Singh*, 182 F.3d at 510. Following this line of cases, Gomez-Chavez argues that the removal without a hearing violates his due process rights under the Fifth Amendment.

As a preliminary matter, we note that Gomez-Chavez is unquestionably correct when he asserts that aliens, even those illegally present in the United States, are "persons"

within the meaning of the Fifth and Fourteenth Amendment due process clauses. See *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) ("[A]liens who have once passed through our gates, even illegally, may be expelled only after proceedings conforming to traditional standards of fairness encompassed in due process of law.") (quoting *Shaughnessy v. Mezei*, 345 U.S. 206, 212 (1953)); *Plyler v. Doe*, 457 U.S. 202, 210 (1982) (rejecting argument that undocumented aliens, because of their immigration status, are not covered by the Fourteenth Amendment, and observing that "[w]hatever his status under the immigration laws, an alien is surely a 'person' in any ordinary sense of the term. Aliens, even aliens whose presence in this country is unlawful, have long been recognized as 'persons' guaranteed due process of law by the Fifth and Fourteenth Amendments."); *Hampton v. Mow Sun Wong*, 426 U.S. 88, 101-02 (1976) (striking down Civil Service Commission regulations excluding lawful resident aliens from most federal service, as a violation of the Fifth Amendment's due process clause); *Galvan v. Press*, 347 U.S. 522, 530-31 (1954) (upholding a statute requiring deportation of aliens who had been members of the Communist Party, but reaffirming the proposition that "the Executive Branch of the Government must respect the procedural safeguards of due process" when it implements policies relating to aliens). The key question for almost all due process problems, however, is how much in the way of formalities is required in the particular situation before the court. See, *e.g.*, *Mathews v. Eldridge*, 424 U.S. 319, 334-35 (1976).

Here, it is important to bear in mind that we are dealing with immigration policy, which has traditionally been the province of the political branches. The United States has a compelling interest in the efficient and even-handed administration of the laws regulating the admission of foreigners to this country and, in cases where it becomes necessary, removal of anyone who had no right to

be here, or who has forfeited that right by his or her conduct. Balanced against that strong federal interest is Gomez-Chavez's liberty interest in remaining in the United States and the probability of error. But he can have no liberty interest in remaining in violation of applicable United States law. Furthermore, it is important that in this case we are dealing with an order reinstating a prior order of removal. We agree with the other circuits that have considered the question that our jurisdiction in such an instance extends only to the question whether the reinstatement order was properly entered; we cannot look behind that order to the underlying removal order. See *Ojeda-Terrazas v. Ashcroft*, 290 F.3d 292, 295 (5th Cir. 2002) (adopting this rule and citing cases from other circuits).

A reinstatement procedure is quite limited in scope, and thus does not require elaborate procedures. The INS must determine only (1) the identity of the alien, (2) whether she was subject to a prior removal order, and (3) the terms on which she left and reentered the country. Gomez-Chavez does not dispute that all three of these matters were ascertained, and ascertained accurately, at the July 18 proceeding. He argues instead that the reinstatement process is unconstitutional because the determinations are made not by judicial officials, but by administrative officials.

Gomez-Chavez has not, however, given a complete description of the process. True, it is an INS administrative official who determines whether the reinstatement criteria are met, but after the agency has acted, the alien is entitled to direct judicial review in the court of appeals. This is hardly an unusual pattern, even if the agency processes here were more truncated than many. Although we may not grant immigration inspectors the same fact-finding deference as we would immigration judges, there is a presumption that the immigration in-

spectors are not biased. *Marcello v. Bonds*, 349 U.S. 302, 313-14 (1955). In either case we look to see if the official abided by the agency rules as well as the Constitution. We need not decide what kind of procedures would have been necessary if, upon the INS official's apparent discovery of irregularities in Gomez-Chavez's situation, he had immediately challenged the accuracy of that determination (for example, by arguing that the official had the wrong person, or that the five-year time period had run, or that he had obtained the Attorney General's permission, etc.). If these points come up only on appeal, because of the summary nature of the initial proceeding, it may still not be too late to explore the facts. The Ninth Circuit has adopted a procedure, which the INS urges us to approve as well, under which a case with disputed facts may be transferred to the district court pursuant to 28 U.S.C. § 2347(b)(3) for a hearing. See *Gallo-Alvarez v. Ashcroft*, 266 F.3d 1123, 1129 (9th Cir. 2001).

This case is not the one in which we need to decide whether the method supported by the *Gallo-Alvarez* court is the best way to address problems with the reinstatement proceeding, or if other steps might be preferable. Here, no additional fact-finding is necessary, because there are simply no disputed facts that could make a difference for Gomez-Chavez. At argument Gomez-Chavez's counsel admitted that the sole reason for requesting a hearing at this time was to obtain a waiver under I-212 from the removal proceedings. If his I-212 application were approved, then Gomez-Chavez could have his I-485 application for adjustment of status renewed. But the INS was entitled to proceed on the basis of the earlier order and to avoid rewarding Gomez-Chavez for his illegal reentry (which it facilitated for a time by granting work permits, before it detected the problem). Gomez-Chavez remains removable despite his I-212 application.

**IV**

We note finally that the INS conceded at oral argument that one legitimate avenue remains for Gomez-Chavez. The Attorney General has the power, conferred by 8 U.S.C. § 1182(a)(9)(B)(v), to waive the statute's general prohibition upon readmission to the United States for aliens subject to an order of removal, if the person is the spouse or child of a U.S. citizen or lawful permanent resident alien, and if the refusal of admission "would result in extreme hardship to the citizen or lawfully resident spouse or parent of such alien." *Id.* The Attorney General has sole and unreviewable discretion to grant any such waiver. Nonetheless, according to INS counsel, Gomez-Chavez would be able to apply for a waiver from a location outside the United States, and we have no way of knowing how the Attorney General might respond.

We therefore recall the mandate in our prior order in this matter, No. 01-3068, and reinstate that appeal. On the merits, we decline to disturb the INS order reinstating the removal order and requiring Gomez-Chavez's immediate departure from the United States. We also AFFIRM the district court's order in No. 01-3454 dismissing the complaint.

A true Copy:

      Teste:

                                 *Clerk of the United States Court of*
                                     *Appeals for the Seventh Circuit*