**Francilia PADILLA, Petitioner,**

v.

**John ASHCROFT, Attorney General, Respondent.**

No. 02–70430.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 11, 2003.

Filed July 1, 2003.

922

James M. Byrne, San Francisco, CA, for the petitioner.

Papu Sandhu, Senior Litigation Counsel, and Earle B. Wilson, Attorney, Office of Immigration Litigation, Civil Division, Department of Justice, Washington, DC, for the respondent.

Before KOZINSKI, GRABER, and BERZON, Circuit Judges.

Opinion by Judge GRABER; Concurrence by Judge BERZON.

GRABER, Circuit Judge:

Petitioner Francilia Padilla attempted to enter the United States using fraudulent documents and was removed pursuant to an expedited procedure that does not afford a hearing. She reentered illegally. After she applied for an adjustment of status, the Immigration and Naturalization Service ("INS") reinstated the prior removal order pursuant to another expedited procedure that does not afford a hearing. She sought review of the reinstatement, arguing that the prior order was reinstated in violation of her right to due process. We deny the petition because Petitioner cannot demonstrate that the failure to afford a hearing prejudiced her.

FACTS AND PROCEDURAL HISTORY

Petitioner, a Guatemalan national, first sought entry into the United States via the Paseo del Norte Bridge in El Paso, Texas, in November 1997. Immigration officials suspected that her papers were forged and detained her for questioning. Petitioner admitted that the immigration forms were not hers and that she had substituted her photo for that of the rightful owner. INS officers ordered her removed pursuant to 8 U.S.C. § 1225(b)(1)(A)(i), which provides:

If an immigration officer determines that an alien ... who is arriving in the United States ... is inadmissible under section 1182(a)(6)(C) [deeming inadmis-

sible aliens who attempt entry through fraud or misrepresentation] ... of this title, the officer shall order the alien removed from the United States without further hearing or review unless the alien indicates either an intention to apply for asylum ... or a fear of persecution.

Petitioner admitted fraud and expressed neither an intention to apply for asylum nor a fear of persecution. Thus, INS officers removed her pursuant to § 1225's expedited procedure.

The next day, Petitioner entered the United States illegally by swimming across the Rio Grande River. She eventually settled in San Francisco, California, and married a United States citizen.

In April of 2001, Petitioner filed for an adjustment of status, attempting to take advantage of a statutory window of opportunity afforded by the Legal Immigration Family Equity Act ("LIFE Act"). The LIFE Act offered aliens who had entered without inspection a chance to adjust their status based on marriage to a United States citizen or legal resident. Pub.L. No. 106–554, 114 Stat. 2763, 2763A–324 (2000). The Act amended 8 U.S.C. § 1255(i) to provide for adjustment of status for aliens who were physically present in the United States, married to a lawful permanent resident or United States citizen, and who had applied with requisite filing fees within the relevant period. The 2000 amendments extended to April 30, 2001, the period within which to file applications.

In January of 2002, Petitioner had an interview with the INS, prompted by her adjustment-of-status application. During the interview, the INS agent discovered that Petitioner was subject to an order of removal. The INS ordered the prior removal order reinstated under 8 U.S.C. § 1231(a)(5), which provides:

If the Attorney General finds that an alien has reentered the United States illegally after having been removed or having departed voluntarily, under an order of removal, the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed, the alien is not eligible and may not apply for any relief under this chapter, and the alien shall be removed under the prior order at any time after the reentry.

The implementing regulation states in relevant part:

An alien who illegally reenters the United States after having been removed, or having departed voluntarily, while under an order of exclusion, deportation, or removal shall be removed from the United States by reinstating the prior order. The alien has no right to a hearing before an immigration judge in such circumstances.

8 C.F.R. § 241.8(a).

Petitioner filed a petition for habeas corpus in the district court. Pursuant to *Castro–Cortez v. INS,* 239 F.3d 1037, 1046–47 (9th Cir.2001), the parties stipulated that the petition should be transferred to this court. We granted a stay of the reinstatement order pending our review of the merits.

### STANDARD OF REVIEW

■ We review de novo due process challenges to immigration decisions. *Ramirez–Alejandre v. Ashcroft,* 320 F.3d 858, 869 (9th Cir.2003) (en banc).

### DISCUSSION

We deal here with the interaction between two methods of removal. The first provides for the expedited removal—without a hearing—of an alien who is deemed

to be inadmissible upon attempted entry, due to misrepresentation. 8 U.S.C. § 1225(b)(1)(A). The second provides for the reinstatement of a prior removal order—without a hearing—if the alien later is found in the United States after reentering illegally. 8 U.S.C. § 1231(a)(5). The INS removed Petitioner under § 1225(b)(1)(A) and now seeks to reinstate that removal under § 1231(a)(5).

■ Petitioner does not challenge her initial removal. Even if she did, the reinstatement statute, as interpreted in our case law, bars review of that order either directly or collaterally. 8 U.S.C. § 1231(a)(5); *Alvarenga Villalobos v. INS,* 271 F.3d 1169, 1170–71 (9th Cir.2001).

■ By contrast, we do have jurisdiction to review the reinstatement order. *Castro–Cortez,* 239 F.3d at 1046. The question, then, is whether—accepting the prior order as valid—due process requires a hearing upon reinstatement of that order.

The Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA") revised the reinstatement provision, *former* 8 U.S.C. § 1252(f), to its current form, codified at 8 U.S.C. § 1231(a)(5).[1] The revisions both expanded the types of orders that can be reinstated and limited the relief available to aliens whose orders are reinstated. *Castro–Cortez,* 239 F.3d at 1040. The implementing regulation further altered the procedures to be followed in reinstating removal orders. Before the enactment of IIRIRA, aliens subject to reinstatement had a right to a hearing before an immigration judge.

8 C.F.R. § 242.23 (repealed 1997). As noted, the current regulation denies those aliens such a hearing. 8 C.F.R. § 241.8(a).[2]

In *Castro–Cortez,* we expressed "serious doubts" as to whether the INS's procedures for imposing reinstatement orders comports with due process. 239 F.3d at 1050. We explicitly did not decide whether the regulation violated due process, however. *Id.* Instead, we concluded that the reinstatement provision did not apply to the petitioners in that case because they had reentered before the effective date of the relevant amendments. *Id.*

We again reserved the due process issue in *Alvarenga Villalobos* because the petitioner in that case had received one full and fair hearing before the INS imposed the first order of removal and was challenging the validity of his original removal only. 271 F.3d at 1174. Therefore, we concluded that the petitioner had already received all the process that was due in the first hearing. *Id.*

Here, Petitioner illegally reentered after the effective date of IIRIRA, so she falls outside the holding in *Castro–Cortez.* She did not receive a hearing as to the prior removal order, so she falls outside the holding of *Alvarenga Villalobos.* However, we still need not decide whether the INS's regulation offends due process, because Petitioner cannot show any prejudice as a result of the INS's failure to afford a hearing.

■■ "As a predicate to obtaining relief for a violation of procedural due process rights in immigration proceedings, an

---

1. The statute is quoted at p. 4, above.

2. Even assuming that *Alvarenga Villalobos v. INS,* 271 F.3d 1169, 1174 (9th Cir.2001), interprets 8 C.F.R. § 241.8(a) to require a full and fair hearing with respect to the original

order of exclusion, deportation, or removal that is being reinstated, Petitioner cannot show prejudice. That is so because, as we have emphasized above, she does not challenge her original removal; a hearing concerning it therefore could not help her.

alien must show that the violation prejudiced him" or her. *Ramirez–Alejandre*, 320 F.3d at 875. In order to demonstrate prejudice, an alien need not show that a hearing necessarily would afford relief. *United States v. Arrieta*, 224 F.3d 1076, 1079 (9th Cir.2000). She must only demonstrate a " 'plausible' ground for relief." *Id.*

■ Petitioner cannot demonstrate even a plausible ground for relief, because she does not challenge any of the three "relevant determinations" underlying a reinstatement order. *Castro–Cortez*, 239 F.3d at 1048. She admits that (1) she is the alien (2) who was previously removed and (3) who reentered the United States illegally. A hearing before an immigration judge, therefore, could not help her because those are the only three elements at issue in determining whether a reinstatement order is valid. Section 1231(a)(5) provides that an alien who meets those criteria flatly "is not eligible" for other relief.

Our holding today comports with that of the other circuits to have considered the issue. Most similarly, in *Gomez–Chavez v. Perryman*, 308 F.3d 796, 801 (7th Cir. 2002), *petition for cert. filed*, 71 U.S.L.W. 3680 (U.S. Mar. 10, 2003) (No. 02–1529), the Seventh Circuit considered the due process argument of an alien who had been removed through the abbreviated procedures in § 1225(b)(1), reentered illegally, and had the prior order reinstated under § 1231(a)(5)'s summary procedures. The Seventh Circuit held that due process was not offended because the alien had conceded all three of the relevant criteria underlying a reinstatement order. *Id.* at 801–02. Further factfinding was unnecessary because there were "simply no disputed facts that could make a difference" to the petitioner. *Id.* at 802; *accord Ojeda–*

*Terrazas v. Ashcroft*, 290 F.3d 292, 302 (5th Cir.2002).

■ Notwithstanding the statutory bar to eligibility for relief in the reinstatement provision, Petitioner argues she is eligible for adjustment of status pursuant to the LIFE Act, as amended. 114 Stat. at 2763A–324. The LIFE Act provided a statutory window of opportunity to seek adjustment of status for aliens who had entered the country without inspection, were physically present in the United States as of the date of amendments, were married to United States citizens, and applied within the relevant time. Although Petitioner fully complied with those procedures, she still is not eligible for relief for two reasons.

First, the bar to relief in the reinstatement provision, 8 U.S.C. § 1231(a)(5), controls. In the same 2000 amendments that extended the application period for LIFE Act relief, Congress expressly excluded certain classes of aliens from the bar of § 1231(a)(5). The amendments revised section 202 of the Nicaraguan Adjustment and Central American Relief Act and section 902(a) of the Haitian Refugee Immigration Fairness Act of 1998 to exempt aliens described in those acts who apply for adjustment of status from reinstatement pursuant to § 1231(a)(5). In other words, when Congress intended to exempt certain groups of aliens from the sweep of the reinstatement statute, it knew how to do so. Petitioner does not fall within the classes that Congress elected to exclude. We therefore conclude that Congress intended no exemption in Petitioner's case.

Second, Petitioner is ineligible for relief under the LIFE Act even if she were not subject to reinstatement. The LIFE Act required that applicants be *otherwise admissible* to the United States. 8 U.S.C. § 1255(i) (1999). Petitioner is inadmissible

pursuant to 8 U.S.C. § 1182(a)(6)(C)(i),[3] which deems inadmissible aliens who seek admission through misrepresentation.

PETITION DENIED.

BERZON, Circuit Judge, concurring:

I concur in the majority's result. I agree that Padilla was inadmissible at the time her order of removal was reinstated. The denial of her application for adjustment of status correctly stated that Padilla was "inadmissible in that, following deportation, [she] re-entered the United States without the permission of the Attorney General."[1] *See* 8 U.S.C. § 1182(a)(9)(A)(ii) ("Any alien not described in clause (i) ['Arriving aliens'] who ... has been ordered removed under section 240 or any other provision of law ... is inadmissible."). A request for permission to reapply for entry, *see* 8 C.F.R. §§ 212.2(a); 212.2(e),[2] might have cured Padilla's inadmissibility premised on her illegal reentry, but no such request was ever filed with the district director. As a result, Padilla has not shown that she was prejudiced by the failure to afford her a hearing prior to the reinstatement, because she does not identify a plausible claim for opposing removal pursuant to reinstatement.

I disagree, however, with the majority's (and the agency's) reliance on the bar to relief contained in 8 U.S.C. § 1231(a)(5) as an alternative ground for denying the petition. That provision, enacted as part of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub. L. No. 104–208, 110 Stat. 3009 (Sept. 30, 1996), must be read in harmony with the subsequently amended 8 U.S.C. § 1255(i), *see* Pub. L. No. 105–119 § 111, 111 Stat. 2440, 2458 (Nov. 26, 1997), under which Padilla applied for adjustment of status. In an appropriate case I would permit the agency a first opportunity to consider the intersection of these two statutory provisions. Absent such agency guidance, my interpretation is that the later-enacted section 1255(i) should be given effect alongside section 1231(a)(5), not obliterated by it. Padilla applied for adjustment of status under the former provision before her removal order was reinstated pursuant to the latter. She was therefore not applying for *relief* barred by section 1231(a)(5), as removal had not been ordered at the time she applied.

The reinstatement provision is silent about how prior applications for adjustment of status are to be treated. The legislative history of IIRIRA suggests a concern with applications filed after, not before, a prior order of removal is reinstated:

**3.** That provision states:

Any alien who, by fraud or willfully misrepresenting a material fact, seeks to procure (or has sought to procure or has procured) a visa, other documentation, or admission into the United States or other benefit provided under this chapter is inadmissible.

**1.** The INS argues that Padilla, due to her initial attempt at a fraudulent entry, is inadmissible under 8 U.S.C. § 1182(a)(6)(C)(i). Fraudulent entry was not a reason given by the agency for denying Padilla's application for adjustment of status.

**2.** 8 C.F.R. § 212.2(e) states: "An applicant for adjustment of status under section 245 of the Act and part 245 of this chapter must request permission to reapply for entry in conjunction with his or her application for adjustment of status. *This request is made by filing an application for permission to reapply, Form I–212, with the district director having jurisdiction over the place where the alien resides.* If the application under section 245 of the Act has been initiated, renewed, or is pending in a proceeding before an immigration judge, the district director must refer the Form I–212 to the immigration judge for adjudication." (Emphasis added.)

If an alien reenters the United States illegally after having been removed or departed voluntarily under an order of removal, the prior order of removal is reinstated and the alien shall be removed under the prior order, which shall not be subject to review. The alien *is* not eligible *to apply* for any relief under the INA.

Conference Report H.R. 104–828 (Sept. 24, 1996), 142 Cong. Rec. H10,897 (1996) (emphasis added).

I therefore find persuasive the analysis on this question in *Prado Hernandez v. Reno,* 86 F.Supp.2d 1037 (W.D.Wash.1999). *Prado Hernandez* held that the INS can and should consider on its merits a fully-perfected application for adjustment of status filed before reinstatement proceedings are instigated.

Prado Hernandez, like Padilla, was detained *after* making an application for adjustment of status. The court stated:

Prado Hernandez's request for adjudication of his application for adjustment of status [...] does not constitute a challenge to his deportability under INA § 241(a)(5) [8 U.S.C. § 1231(a)(5)] or a collateral attack on the prior order of deportation. Nor can the application be deemed a request for relief from deportation; *Prado Hernandez applied for adjustment of status before any deportation proceedings had commenced.* [...] Here, the INS did not move to reinstate the prior deportation order until after Prado Hernandez had applied for adjustment of status. The language of Section 241(a)(5), therefore, is no bar to considering the application.

*Id.* at 1041 (emphasis added). Further, "[t]he absence, in Section 245(i) [8 U.S.C. § 1255(i)], of a cross-reference to Section 241(a)(5) or other language barring adjustment to aliens who illegally reentered after deportation is significant in light of the numerous other limitations and statutory cross-references in INA § 245 in general and Section 245(i) in particular." *Id.* at 1041 n. 4.

The government argues against this reading of 8 U.S.C. § 1231(a)(5) on the ground that the wording of amendments to the Legal Immigration Family Equity ("LIFE") Act demonstrates that Congress intended section 1231(a)(5) to cut off relief to an individual who has filed an application for adjustment of status prior to reinstatement. These amendments, *see* P.L. No. 106–554 §§ 1503(c)(2); 1505(a)(1)(B); 1505(b)(1)(B), 114 Stat. 2763, 2763A325; 2763A326; 2763A327 (Dec. 21, 2000), made exceptions for Nicaraguans, Haitians, and members of two class action groups as follows: "Section 241(a)(5) of the Immigration and Nationality Act [8 U.S.C. § 1231(a)(5)] shall not apply with respect to an alien who is applying for adjustment of status under this section."

This language precludes removal under section 1231(a)(5) of the covered groups of aliens while applications for adjustment of status are pending. It does not address the availability of adjustment of status *vel non,* or the INS's authority to refrain from reinstatement and removal while a potentially meritorious application for adjustment of status is pending, should the agency choose to do so. These LIFE Act amendments therefore fail to answer the statutory interpretation question before us.

My conclusion that proper adjustment of status applications should not be cast aside by a subsequent reinstatement order does not apply in this case, however. Padilla failed to submit a cognizable application for adjustment of status because she never requested the necessary permission to reapply for entry. And, due to her inadmissibility, she has not demonstrated any

prejudice. I therefore concur in the denial of the petition.