**Gregorio Vitales DELEON, Petitioner,**

v.

**John ASHCROFT, Attorney General, Respondent.**

No. 02–71585.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 9, 2003.

Decided June 30, 2004.

Charles E. Nichol, Esq., Law Office of Charles E. Nichol, San Francisco, CA, for Petitioner.

Regional Counsel, Western Region Immigration & Naturalization Service, Laguna Niguel, CA, Ronald E. LeFevre, Chief

Legal Officer, Office of the District Counsel, Department of Homeland Security, San Francisco, CA, Emily A. Radford, Esq., Papu Sandhu, U.S. Department of Justice, Washington, DC, for Respondent.

Before: PREGERSON, BEAM,[*] and PAEZ, Circuit Judges.

### MEMORANDUM [**]

Gregorio Vitales De Leon petitions for review of the Immigration and Naturalization Service's order reinstating his prior order of deportation under I.N.A. § 241(a)(5), 8 U.S.C. § 1231(a)(5). We have jurisdiction to review De Leon's petition for review of a reinstatement order under I.N.A. § 242(a), 8 U.S.C. § 1252(a). *See Castro–Cortez v. INS*, 239 F.3d 1037, 1043–44 (9th Cir.2001). For the reasons set forth below,[1] we deny De Leon's petition.[2]

■ De Leon first contends that the reinstatement statute is inapplicable to him because he was deported, not removed. He points to the text of the statute, which reads in full:

> If the Attorney General finds that an alien has reentered the United States illegally after having been removed or having departed voluntarily, under an order of removal, the prior order of removal is reinstated from its original date and is not subject to being re-

opened or reviewed, the alien is not eligible and may not apply for any relief under this Act, and the alien shall be removed under the prior order at any time after reentry.

8 U.S.C. § 1231(a)(5). De Leon reasons that because this statute only refers to orders of "removal," it is inapplicable to deportation orders.

De Leon's position, however, is impossible to square with IIRIRA § 309(d)(2): "any reference in law to an order of removal shall be deemed to include a reference to an order of exclusion and deportation or an order of deportation." As the Fourth Circuit has explained, "IIRIRA § 309(d)(2) expands the definition of removal in [the reinstatement statute] to include deportation." *Valasquez–Gabriel v. Crocetti*, 263 F.3d 102, 105 (4th Cir.2001). Similarly, we have held that "although [the reinstatement statute] refers to 'removal,' this also applies to orders of deportation." *Gallo–Alvarez v. Ashcroft*, 266 F.3d 1123, 1129 n. 3 (9th Cir.2001). Accordingly, we reject De Leon's first contention because it is contrary to the plain text of the statute and our precedent.

■ Second, De Leon contends that the reinstatement statute cannot retroactively apply to him because his deportation order was entered before IIRIRA's enactment. We have held, however, that the reinstatement statute "applies to situations in which the predicate order of deportation was entered prior to the 1996 revisions of the immigration law." *Gallo–Alvarez*, 266

---

[*] The Honorable C. Arlen Beam, Senior United States Circuit Judge for the Eighth Circuit, sitting by designation.

[**] This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

1. Because the parties are familiar with the facts, we discuss them only insofar as they are necessary to reach our decision.

2. We review *de novo* De Leon's statutory interpretation and constitutional arguments. *United States v. Carranza*, 289 F.3d 634, 642 (9th Cir.2002); *See United States v. Stokes*, 292 F.3d 964, 966 (9th Cir.2002).

F.3d at 1129. Accordingly, De Leon's retroactivity challenge is foreclosed by our precedent.

■ Third, De Leon argues that the reinstatement procedure violates due process. We recently held that the issue of whether the reinstatement statute affords adequate procedural protections had been "reserved" in our previous cases. *Padilla v. Ashcroft*, 334 F.3d 921, 924 (9th Cir. 2003). But as we recently said in *Padilla*, "we still need not decide whether the INS's regulation offends due process." 334 F.3d at 924–25. Even if the statute provides inadequate process, De Leon simply cannot establish prejudice. In *Padilla*, we explained the problem now facing De Leon:

> As a predicate to obtaining relief for a violation of procedural due process rights in immigration proceedings, an alien must show that the violation prejudiced him" or her.... She must only demonstrate a " 'plausible' ground for relief." Petitioner cannot demonstrate even a plausible ground for relief, because she does not challenge any of the three "relevant determinations" underlying a reinstatement order. She admits that (1) she is the alien (2) who was previously removed and (3) who reentered the United States illegally. A hearing before an immigration judge, therefore, could not help her because those are the only three elements at issue in determining whether a reinstatement order is valid.

334 F.3d at 924–25. Thus, unless De Leon can plausibly challenge one of the three requirements for a reinstatement order, he cannot obtain relief.

De Leon admits that all three conditions exist. In De Leon's sworn statement, he confessed that he was deported and subsequently reentered the United States. Even De Leon's petition, after admitting that he was subject to a deportation order, concedes that "[o]n or about October 10, 1997, petitioner traveled to Vancouver, Canada and returned to the United States two days later on October 12, 1997 through Blaine, Washington, without being inspected by U.S. immigration authorities." Petitioner's Brief at 4.

Therefore, De Leon cannot plausibly challenge any of the relevant determinations for a reinstatement order. Accordingly, he cannot demonstrate prejudice. Because De Leon cannot establish prejudice, it is unnecessary to consider whether the reinstatement statute comports with standards of procedural due process.

PETITION DENIED.

PREGERSON, Circuit Judge, dissenting.

PREGERSON, Circuit Judge.

De Leon, a citizen of the Philippines, came to the United States on October 10, 1985, as a non-immigrant visitor. On November 21, 1990, he married a lawful permanent resident. On December 6, 1990, De Leon was nonetheless found deportable for overstaying his non-immigrant visa. Accordingly, he was ordered to voluntarily depart no later than December 5, 1991. De Leon did not leave the country until October 1997, when he visited Canada and reentered the United States without inspection two days later. After remaining in the United States for an additional four years, De Leon filed an application for adjustment of status based on his marriage.[1]

---

1. From De Leon's initial entry into the United States in 1985 until he was taken into INS custody in 2001, De Leon worked in food service. He paid his taxes, was never convicted of a criminal offense, and never received any form of government assistance. Until the

At his adjustment of status interview, the INS reinstated De Leon's 1990 deportation order, pursuant to INA § 241(a)(5), and took him into custody for illegally reentering the United States after having been previously ordered deported. Section 241(a)(5), enacted in 1996 as part of the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"), Pub L. No. 104–208, 110 Stat. 3009–546 (1996), provides:

> If the Attorney General finds that an alien has reentered the United States illegally after having been removed or having departed voluntarily, under an order of removal, the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed, the alien is not eligible and may not apply for any relief under this Act, and the alien shall be removed under the prior order at any time after reentry.

INA § 241(a)(5), *codified at* 8 U.S.C. § 1231(a)(5).

I dissent because I believe that the reinstatement of De Leon's 1990 deportation order under section 241(a)(5), a 1996 statute, is impermissibly retroactive and violates De Leon's due process rights.

### I. Section 241(a)(5) and Retroactivity

In *Landgraf v. USI Film Products,* 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994), the Supreme Court recognized that "the presumption against retroactive legislation is deeply rooted in our jurisprudence, and embodies a legal doctrine centuries older than our Republic." *Id.* at 265, 114 S.Ct. 1483. Because of the dangers of retroactive legislation, "[a] statute may not be applied retroactively ... absent a clear indication from Congress that

it intended such a result." *INS v. St. Cyr,* 533 U.S. 289, 316, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001).

This case is not the first case in which we have considered whether section 241(a)(5) may apply to conduct that took place before its enactment. In *Castro–Cortez v. INS,* 239 F.3d 1037 (9th Cir. 2001), a group of aliens who had been deported and reentered the United States prior to IIRIRA's April 1, 1997, effective date challenged the INS' reinstatement of their pre-IIRIRA deportation orders on the basis that section 241(a)(5) should apply to only *post*-IIRIRA reentries. *See id.* at 1050. According to the petitioners, reinstatement of a deportation order where the reinstatement triggering event—*viz.,* the alien's illegal reentry—took place before IIRIRA's enactment, constituted an impermissibly retroactive application of the reinstatement provision. *See id.* We agreed and narrowly held that section 241(a)(5) may not apply to pre-IIRIRA reentries. *See id.* at 1050–52.

*Castro–Cortez* does not directly control the outcome of this case because, while De Leon's deportation order was issued before IIRIRA's effective date, his reentry occurred after that date. Nevertheless, *Castro–Cortez'* statutory construction and legislative history analyses of section 241(a)(5) are relevant here because they demonstrate that Congress rejected the application of section 241(a)(5) to *both* pre-IIRIRA reentries *and* pre-IIRIRA deportation orders.

First, *Castro–Cortez* recognized that when Congress enacted IIRIRA in 1996 it eliminated *all* retroactive language from the reinstatement provision. *See id.* at 1051. Section 241(a)(5)'s predecessor was

INS took De Leon into custody, he supported his wife and their ten-year-old United States citizen son.

enacted in 1952 and expressly applied to "any alien [who] has unlawfully reentered the United States after having previously departed or been deported pursuant to an order of deportation, *whether before or after June 27, 1952 ....*" INA § 242(f), *codified at* 8 U.S.C. § 1252(f) (repealed 1996) (emphasis added).[2] Rather than modifying the italicized retroactivity language to comport with IIRIRA's effective date or even simply leaving the retroactivity language as it was, Congress chose to delete the retroactivity language from the reinstatement provision altogether when it enacted IIRIRA in 1996. *Compare* INA § 241(a)(5), 8 U.S.C. § 1231(a)(5), *with* INA § 242(f), 8 U.S.C. § 1252(f) (repealed 1996); *see also Castro–Cortez,* 239 F.3d at 1051. The deletion of the retroactivity language provides "strong support" for the claim that Congress disapproved of the reinstatement statute's retroactive application. *Castro–Cortez,* 239 F.3d at 1051. Indeed, "[f]ew principles of statutory construction are more compelling than the proposition that Congress does not intend *sub silentio* to enact language that it has earlier discarded...." *INS v. Cardoza–Fonseca,* 480 U.S. 421, 442–43, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987) (quotations and citations omitted); *see also Nalley v. Nalley,* 53 F.3d 649, 652 (4th Cir.1995) ("When the wording of an amended statute differs in substance from the wording of the statute prior to amendment, we can only conclude that Congress intended the amended statute to have a different meaning." (citations omitted)).

Equally compelling, Congress explicitly rejected versions of the new reinstatement statute that included the retroactivity language. *See Bejjani v. INS,* 271 F.3d 670, 684 (6th Cir.2001). Both the House and Senate considered but rejected a version of the new reinstatement statute that would have applied to deportation orders issued "before or after the date of enactment of this Act...." *Id.* at 685 (quoting H.R.Rep. No. 104–469(I) at 416–17 (1996), 1996 WL 168955; S.Rep. No. 104–249 at 118, (1996), 1996 WL 180026). Thus, not only did Congress eliminate the retroactivity language from former section 242(f), it also considered and rejected new language which would have applied the new reinstatement provision retroactively. *See id.* To read language into a statute that Congress has considered and rejected, "is not a construction of [the] statute, but, in effect an enlargement of it by the court.... To supply omissions transcends the judicial function." *Iselin v. United States,* 270 U.S. 245, 251, 46 S.Ct. 248, 70 L.Ed. 566 (1926) (citations omitted); *see also Trevan v. Office of Personnel Mgmt.,* 69 F.3d 520, 525–26 (Fed.Cir.1995) ("[W]e must enforce the statute as written and are not free to ignore what appears to have been a conscious choice by Congress....").

Moreover, when Congress wants a statute to apply retroactively, it knows how to say so. Congress clearly stated its intent that specific provisions of the Act would apply retroactively elsewhere in IIRIRA. *See Castro–Cortez,* 239 F.3d at 1051–52 (collecting examples of where Congress specified in IIRIRA that certain amendments shall apply to conduct taking place before enactment of the amended provisions); *cf. United States v. Ubaldo–Figueroa,* 364 F.3d 1042, 1051–56 (9th Cir. 2004) (Pregerson, J., concurring) (stating

**2.** Former section 242(f) provided:

Should the Attorney General find that any alien has unlawfully reentered the United States after having previously departed or been deported pursuant to an order of deportation, whether before or after June 27, 1952 ... the previous order of deportation shall be deemed to be reinstated from its original date and such alien shall be deported under such previous order at any time subsequent to such reentry.

that IIRIRA § 321, while expressly retroactive, violated the petitioner's due process rights). The absence of retroactive language in section 241(a)(5) "supports the view, by negative implication, that [the reinstatement statute] does not retroactively apply." *Castro–Cortez*, 239 F.3d at 1051.

Finally, "congressional silence is instructive." *Id.* at 1052. Congress enacted IIRIRA in 1996, well after the Supreme Court announced the *Landgraf* "default rule" against retroactivity. Thus, we presume that Congress acts "with *Landgraf's* default rule in mind." *Id.* By deleting retroactivity language from the old reinstatement statute and refusing to include retroactivity language while fully aware of the *Landgraf* default rule, Congress expressed its intent that § 241(a)(5) not apply retroactively. *See id.*

Applying the above principles of statutory construction and legislative history

analysis in *Castro–Cortez,* we concluded that § 241(a)(5) could not apply to pre-IIRIRA illegal reentries without running afoul of *Landgraf's* anti-retroactivity principle. *See generally id.* at 1050–52. There is no principled reason why *Castro–Cortez'* reasoning and analysis should not similarly bar the retroactive application of section 241(a)(5) to De Leon's pre-IIRIRA deportation order.[3] With its enactment of IIRIRA, Congress eliminated *all* retroactivity language from the INA's reinstatement provision. The absence of *any* retroactivity language in the reinstatement provision indicates that Congress did not intend the Attorney General to apply it to *any* conduct or events predating the provisions enactment.

## II. The Majority's Reliance on a Dictum

In *Gallo–Alvarez v. Ashcroft,* 266 F.3d 1123 (9th Cir.2001), we considered wheth-

---

**3.** Indeed, the "long followed ... interpretive principle" known as "the doctrine of the last antecedent," *Northwest Forest Resource Council v. Glickman,* 82 F.3d 825, 832 (9th Cir. 1996), indicates that *Castro–Cortez* did not go far enough. *Castro–Cortez* should have held that section 241(a)(5) may not properly be applied to pre-IIRIRA reentries *or* deportation orders. Under the last antecedent doctrine, "where one phrase of a statute modifies another, the modifying phrase applies only to the phrase immediately preceding it." *Id.* In other words, we look to the last antecedent to determine the modifying phrase's impact on the meaning of a statute. Admittedly, this case requires a nuanced application of this interpretive principle. Here, we are charged with determining what effect the *removal* of a modifying phrase has on the meaning of the statute. Nevertheless, this is not a difficult task.

In the pre-IIRIRA reinstatement provision, the retroactivity language "whether before or after June 27, 1952" was immediately preceded by the phrase "or been deported pursuant to an order of deportation." INA § 242(f), 8 U.S.C. § 1252(f) (repealed 1996). According-

ly, under the pre-IIRIRA reinstatement provision, attorneys general could reinstate a prior order of deportation issued "before or after June 27, 1952." *Id.* Attorneys general did, in fact, reinstate pre–1952 deportation orders under the former reinstatement provision because the provision expressly authorized them to do so. *See, e.g., De Souza v. Barber,* 263 F.2d 470 (9th Cir.1959) (rejecting collateral attack on 1930 deportation order that was reinstated in 1957); *United States ex rel. Blankenstein v. Shaugnessy,* 112 F.Supp. 607, 609–11 (S.D.N.Y.1953) (rejecting collateral attack on 1924 deportation "warrant" that was reinstated in 1953).

Congress, however, removed the express authorization to reinstate pre-enactment deportation orders from the former reinstatement provision and refused to reinsert it into the current reinstatement provision (section 241(a)(5)). To continue to read that authorization into the provision ignores Congress' intent. This we may not do. "When Congress acts to amend a statute, we presume it intends its amendment to have real and substantial effect." *Stone v. INS,* 514 U.S. 386, 397, 115 S.Ct. 1537, 131 L.Ed.2d 465 (1995) (citation omitted).

er the INS may use section 241(a)(5) to reinstate a deportation order where the alien was granted voluntary departure in lieu of deportation. The petitioner in *Gallo–Alvarez* never briefed or argued that section 241(a)(5) should not apply to pre-IIRIRA deportation orders. Nevertheless, in one sentence, we stated that section 241(a)(5) "applies to situations in which the predicate order of deportation was entered prior to the 1996 provisions of the immigration law." *Id.* at 1129 (citing *Mendez–Tapia v. Sonchik,* 998 F.Supp. 1105, 1108 (D.Ariz.1998)). The majority holds that "De Leon's retroactivity challenge is foreclosed by [this] precedent." I disagree. Because the petitioners in *Gallo–Alvarez* failed to argue that section 241(a)(5) may not properly apply to pre-IIRIRA deportation orders and because *Gallo–Alvarez* assumed that it may without giving the proposition *any* deliberative attention, the *Gallo–Alvarez* quote on which the majority relies is a non-binding dictum.[4] *See, e.g., United States v. Johnson,* 256 F.3d 895, 915 (9th Cir.2001) (Kozinski, J., concurring) (defining dicta narrowly as "a statement … made casually and without analysis" and incidental "to another legal issue that commands the panel's full attention"). Accordingly, whether section 241(a)(5) may properly apply to pre-IIRIRA deportation orders is an unresolved question in this circuit and, for the reasons expressed above, one that I would resolve in De Leon's favor.

I dissent.

---

**4.** I was a member of the *Gallo–Alvarez* panel that let this unfortunate and unnecessary dictum slip by.