In the

# United States Court of Appeals

## For the Seventh Circuit

No. 06-2387

AMERICA FONSECA-SANCHEZ,

*Petitioner,*

*v.*

ALBERTO R. GONZALES,

*Respondent.*

Petition for Review of a Decision
of the Board of Immigration Appeals.
No. A91-297-177

ARGUED FEBRUARY 8, 2007—DECIDED APRIL 13, 2007

Before RIPPLE, MANION, and WILLIAMS, *Circuit Judges.*

MANION, *Circuit Judge.* The Immigration and Customs Enforcement ("ICE") branch of the Department of Homeland Security ("DHS") issued a Final Administrative Removal Order ("FARO") to America Fonseca-Sanchez, directing her removal from the United States. Fonseca-Sanchez then petitioned the Citizenship and Immigration Service ("CIS") for interim relief under the "U" visa statute to avoid removal. Because DHS had not (and still has not) issued final "U" visa regulations to determine eligibility, CIS relied upon criteria contained in what it calls "guidance memoranda" issued by DHS. Based on those

documents, CIS denied Fonseca-Sanchez's petition on grounds that she had been engaged in criminal activity and she already had been issued a final order of removal. Fonseca-Sanchez now petitions this court to review CIS' decision to deny her interim "U" visa relief. Because Fonseca-Sanchez failed to exhaust her administrative remedies by not claiming a right to interim "U" visa relief prior to ICE's issuance of the FARO, and because this court's jurisdiction under 8 U.S.C. § 1252 is limited to direct review of final orders of removal and matters decided by ICE in the course of removal proceedings, we dismiss Fonseca-Sanchez's petition for lack of jurisdiction.

## I.

America Fonseca-Sanchez, a Mexican national, illegally entered the United States in 1978 at the age of eight, and illegally resided here until her removal in July 2006. During her residence in the United States, Fonseca-Sanchez gave birth to four children. Jose Martinez, Fonseca-Sanchez's former common-law husband, is the father of two of her children. On at least one occasion in 2003, Martinez was charged with domestic battery of Fonseca-Sanchez, and she provided local police with helpful testimony regarding the underlying facts that were essential to their investigation of Martinez.[1]

---

[1] Fonseca-Sanchez submitted as evidence in support of her petition for interim "U" visa relief three police reports for domestic batteries committed against her by Martinez, which occurred on March 4, 2000, April 27, 2002, and March 24, 2003. She also included in her "U" visa petition a letter of support

(continued...)

Unfortunately for Fonseca-Sanchez, she had her own problems with the law. On December 16, 2002, she pleaded guilty to shoplifting from a Target store merchandise worth more than $150. She was fined and sentenced to 24 months of probation. On December 13, 2004, Fonseca-Sanchez was convicted of retail theft for shoplifting merchandise worth more than $150 from a J.C. Penney store and with contributing to the delinquency of a minor. She was sentenced to 92 days in jail and 24 months of probation. On August 25, 2005, Fonseca-Sanchez violated her probation by missing appointments with her probation officer, and she was resentenced for both offenses to three years' imprisonment in the Illinois Department of Corrections. On April 26, 2006, Fonseca-Sanchez was released from the Illinois Department of Corrections and directly transferred into ICE's custody and detained at the McHenry County Jail in Woodstock, Illinois.

In the meantime, on April 3, 2006, pursuant to 8 U.S.C. § 1228(b), which provides for expedited removal of aliens convicted of aggravated felonies, ICE served Fonseca-Sanchez with a Notice of Intent to Issue a Final Administrative Removal Order ("Notice of Intent"). Aliens subject to removal under this expedited procedure do not appear before an Immigration Judge. *See* 8 C.F.R. § 238.1 (setting

---

[1] (...continued)
from an officer of the DuPage County Sheriff Department. That letter, however, only references the March 22, 2003, incident, and it states that Fonseca-Sanchez provided testimony regarding "the underlying facts [that were] essential to the investigation" of that incident. The officer's letter does not mention whether Martinez was convicted of the domestic violence charge.

forth procedures). Instead, an ICE officer issues a Notice of Intent, to which the alien has ten calendar days to file a response and rebut the charges. 8 C.F.R. § 238.1(b)(2), (c)(1). If the alien does not rebut the charges within ten calendar days, an ICE Supervisory Deportation Officer issues a Final Administrative Removal Order ("FARO") and can remove the alien fourteen days after issuance of that order. 8 C.F.R. § 238.1(d).

It is undisputed that Fonseca-Sanchez did not rebut the charges in the Notice of Intent or make any other response within the ten-calendar-day period following the order.[2] Accordingly, on May 2, 2006, ICE issued to Fonseca-Sanchez a FARO pursuant to 8 U.S.C. § 1101(a)(43)(G),[3] finding that she was not a lawful permanent resident and had been convicted of an aggravated felony. ICE then ordered Fonseca-Sanchez removed to Mexico. Fonseca-Sanchez does not challenge that she was removable based on her criminal convictions.

On May 11, 2006, nine days after ICE issued the FARO to Fonseca-Sanchez, she submitted to CIS a petition for interim relief under the "U" visa statute and requested that ICE stay her removal.[4] In a letter dated May 18, 2006, CIS

---

[2]  ICE is compelled to issue a FARO if the alien does not respond to the Notice of Intent. 8 C.F.R. § 238.1(d)(1).

[3]  Section 1101(a)(43)(G) states that an alien is subject to removal if convicted of "a theft offense (including receipt of stolen property) or burglary offense for which the term of imprisonment is at least one year." 8 U.S.C. § 1101(a)(43)(G).

[4]  With the enactment of the Victims of Trafficking and Violence Protection Act of 2000 ("VTVPA"), Congress created the "U"

(continued...)

responded to Fonseca-Sanchez's petition, stating that it was "not able to grant [her] interim relief" because she had "engaged in criminal activity" and she was "currently in immigration proceedings or ha[d] a final order of removal."[5] The letter also stated, "[y]ou may submit docu-

---

[4] (...continued)

nonimmigrant classification ("U" visa) for victims of certain qualifying criminal activity, including victims of domestic violence, sexual assault, trafficking of aliens, and other crimes. VTVPA, Pub. L. No. 106-386, § 1513(a)(2)(A), 114 Stat. 1464, 1533-34 (2000) (codified at 8 U.S.C. § 1101(a)(15)(U)). The "U" visa was intended to provide temporary legal status to such victims who cooperate with officials during investigations and prosecutions. *Id.* Congress empowered the Attorney General (now the Secretary of Homeland Security) with discretion to convert the status of such immigrants to permanent residents "when doing so is justified on humanitarian grounds, for family unity, or is otherwise in the public interest," but it did not provide a deadline for affected agencies to promulgate regulations with respect to "U" visas. VTVPA, Pub. L. No. 106-386, § 1513(a)(2)(C), 114 Stat. 1464, 1534. In 2005, with no "U" visa regulations yet promulgated, Congress passed the Violence Against Women Act of 2005 ("VAWA 2005"), which the President signed on January 5, 2006. VAWA 2005, Pub. L. No. 109-162, 119 Stat. 2960 (2006). That act stipulated that the Attorney General, Secretary of Homeland Security, and the Secretary of State shall promulgate regulations to implement the "U" visa sections of the VTVPA "not later than 180 days after the date of enactment." VAWA 2005, Pub. L. No. 109-162, § 828, 119 Stat. 2960, 3066 (codified at 8 U.S.C. § 1101). The deadline for the enactment of those regulations passed on July 4, 2006. To date, the final regulations have not been published.

[5] In the absence of final regulations, the Department of Homeland Security continues to work from interim guidance memo-

(continued...)

---

[5]   (...continued)
randa. The guidance memorandum issued by the INS on August 30, 2001, states that the principles that it set forth were "intended solely to guide INS personnel in performing their duties," and that "[t]hey [were] not intended to, do not, and may not be relied upon to create a right or benefit, substantive or procedural, enforceable at law by any individual or other party in removal proceedings, in litigation with the United States, or in any other form or manner." Mem. from Michael D. Cronin to Michael A. Pearson re VTVPA Policy, at 6 (Aug. 30, 2001). Specifically, the guidance memoranda require CIS personnel to identify possible "U" visa eligible victims, and to use available mechanisms, such as parole, deferred action, continuances, and stays of removal, to ensure, at the agency's discretion, that no potential "U" visa eligible victims are removed from the country. *Id.* at 2. Of particular relevance here, CIS' October 8, 2003, guidance memorandum stated that its employees would not have jurisdiction to grant relief to aliens who had been convicted of an aggravated felony, or who were in removal proceedings, or subject to a final order of removal. Mem. from William R. Yates to Director, Vermont Service Center re Centralization of Interim Relief for U Nonimmigrant Status Applications, at 2 (Oct. 3, 2003). Currently, there is no official application form to apply for a "U" visa; thus, aliens who believe they qualify for interim relief may submit correspondence along with evidentiary proof that address the four criteria listed in 8 U.S.C. § 1101(a)(15)(U)(i)(I-IV). *Id.* at 2-5. If the applicant does not submit sufficient information to establish prima facie eligibility, or is otherwise determined to be ineligible for interim relief, the applicant receives a letter indicating the reason(s) that the agency could not grant interim relief. *Id.* at 5. Beginning in October 2005, all such requests are processed at CIS' Vermont Service Center. *Id.* at 2. DHS, acting through CIS' Vermont Service Center, has exclusive authority to adjudicate requests for

(continued...)

mentation to overcome these deficiencies." Fonseca-Sanchez then provided supplemental information to CIS, to which CIS responded by issuing an identical denial letter, only this time dated July 28, 2006. On May 16, 2006, two days prior to receiving her initial denial letter from CIS regarding her preliminary "U" visa application, Fonseca-Sanchez filed in this court the present petition for review of CIS' denial of her "U" visa application pursuant to 8 U.S.C. §§ 1228(b)(3) and 1252.[6]

## II.

Fonseca-Sanchez's petition for review is a direct appeal of CIS' decision to deny her petition for interim "U" visa relief, which if granted would have effectively stayed the FARO issued against her. Her "U" visa claims have been

---

[5] (...continued)
"U" visa interim relief of deferred action, and neither ICE nor Immigration Judges have authority to issue "U" visa interim relief. *See* 8 U.S.C. § 1103(a)(3).

[6] It is unclear why Fonseca-Sanchez filed her petition for review prior to receiving the initial denial letter from CIS. Fonseca-Sanchez's May 16, 2006, petition for review filed in this court states that she is challenging the FARO entered on May 2, 2006, but her briefs in support of her petition for review focus exclusively on CIS' May 18, 2006, denial of her interim "U" visa petition. Because Fonseca-Sanchez's substantive arguments only address CIS' denial of her interim "U" visa petition, and Fonseca-Sanchez concludes that she was removable for the reasons set forth in the Notice of Intent, we restrict our analysis to whether this court has jurisdiction over Fonseca-Sanchez's interim "U" visa claims, rather than whether DHS properly issued the FARO.

reviewed by neither an Immigration Judge nor by the Board of Immigration Appeals. The threshold question we must answer is whether this court may exercise jurisdiction over Fonseca-Sanchez's petition. We review the jurisdictional and legal issues raised in Fonseca-Sanchez's petition de novo. *See Gattem v. Gonzales*, 412 F.3d 758, 763 (7th Cir. 2005) ("Generally speaking, we review questions of law, including jurisdictional questions, de novo.").

This court's jurisdiction is limited to direct review of "final order[s] of removal" and matters decided by ICE in the course of removal proceedings. 8 U.S.C. §§ 1252(a)(1) and 1252(a)(5).[7] To preserve her "U" visa claim for review by this court, Fonseca-Sanchez was required to exhaust her administrative remedies available as of right before the issuance of the final order of removal. 8 U.S.C. § 1252(d)(1) (stating that "a court may review a final order of removal only if—(1) the alien has exhausted all administrative remedies available to the alien as of right . . . ."). The removal procedure at issue here—the expedited removal regime under § 1228(b)—provides a ten-calendar-day period following the issuance of the Notice of Intent during

---

[7] Section 1252(a)(5) states:

> (5) Exclusive means of review
>
> Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 [Mandamus Act] and 1651 [All Writs Act] of such title, a petition for review filed with an appropriate court of appeals in accordance with this section *shall be the sole and exclusive means for judicial review* of an order of removal entered or issued under any provision [in the Immigration and Naturalization Act] . . . .8 U.S.C.A. § 1252(a)(5) (emphasis added).

which the alien may request administrative review of claims that might be raised. 8 C.F.R. § 238.1. If the alien files a response to the Notice of Intent, that response is made a part of the record of proceedings for judicial review. 8 U.S.C. § 1228(b)(4)(C); 8 C.F.R. § 238.1(h). It is undisputed that Fonseca-Sanchez did not file a response to the Notice of Intent prior to ICE's issuance of the FARO, nor did she request an extension of time to do so. Although ICE did not have authority to grant interim "U" visa relief, *see infra* n.4, it did have the authority to stay Fonseca-Sanchez's removal proceedings or decline to issue a FARO if it was aware that Fonseca-Sanchez had applied to CIS for interim "U" visa relief. Fonseca-Sanchez, however, failed to raise any objections to her removal, including her present "U" visa claim. Furthermore, Fonseca-Sanchez filed her petition for review in this court two days *prior* to CIS' original denial of her interim "U" visa petition. Her filing also was over two months *before* CIS issued its second denial based on Fonseca-Sanchez's submission of additional evidence. Therefore, her present petition for review clearly was filed before she had even received an answer from CIS, let alone exhausted that administrative process. Accordingly, we find that Fonseca-Sanchez failed to exhaust her administrative remedies with respect to her "U" visa claim and hold that this court lacks jurisdiction to hear her petition.

This court would still lack jurisdiction, even if we were to find that Fonseca-Sanchez's post-FARO interim "U" visa claim was not barred by her failure to exhaust her administrative remedies following the issuance of the Notice of Intent. Jurisdiction under 8 U.S.C. § 1252 would fail because her claims are not based on a "final order of removal" or a matter decided by ICE in the course of

removal proceedings. 8 U.S.C. §§ 1252(a)(1) and 1252(a)(5). Fonseca-Sanchez filed her "U" visa petition after she was issued the FARO. The only question remaining is whether her "U" visa petition could be considered part of the final order of removal. As we previously have noted, the Supreme Court has instructed that the term " 'final orders of deportation' should be read to include not only the actual order of deportation, but all orders closely related to the deportation proceeding conducted pursuant to 8 U.S.C. § 1252(b) and entered during the proceeding, such as an order denying voluntary departure or an adjustment of status." *Carvajal-Munoz v. INS*, 743 F.2d 562, 566 (7th Cir. 1984) (citing *Foti v. INS*, 375 U.S. 217, 220-23 (1963) (construing former § 1105(a), which was the predecessor to the current § 1252)). "Ancillary determinations made outside the context of a proceeding under 8 U.S.C. § 1252(b), however, such as granting a stay of deportation, are not subject to direct review." *Id.* Thus, "[o]nly matters ' "intimately associated and immediately associated' " with the final order or 'governed by the regulations applicable to the deportation proceeding itself, and . . . ordinarily presented to the special inquiry officer [immigration judge] who entered the deportation order' fall within the ambit of direct appellate review." *Id.* (quoting *Cheng Fan Kwok v. INS*, 392 U.S. 206, 217 (1968) (citations omitted)). Here, Fonseca-Sanchez's petition to CIS for interim relief under the "U" visa statute was made after ICE issued the FARO, and therefore it was outside of the expedited removal proceedings commenced and concluded by ICE. CIS' subsequent denial of Fonseca-Sanchez's petition was separate and apart from the removal proceedings and not "closely related" to the FARO. In other words, CIS' denial was an ancillary determination made outside of the context of a proceeding under

§ 1252(b). Accordingly, this court lacks jurisdiction to exercise direct review over Fonseca-Sanchez's petition.

As a final matter, we note that at the heart of Fonseca-Sanchez's petition is a challenge to DHS' current interpretation of the statutory language creating the "U" visa classification set forth in CIS' guideline memoranda. Specifically, Fonseca-Sanchez contends that there is no basis in the text of the "U" visa statute for the guideline memoranda's disqualification of any petitioner who was convicted of an aggravated felony or who has been subject to a FARO. While a direct petition raising such a claim is not within this court's limited jurisdiction, the government indicated that a potential proper means and forum for such a claim could be an action in the appropriate district court under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701, et seq. Fonseca-Sanchez, however, did not bring her claims under the APA, and therefore we need not address the propriety of such a challenge and lack jurisdiction to consider the merits of her claim.

III.

This court lacks jurisdiction over Fonseca-Sanchez's direct petition for review of CIS' denial of her petition for interim "U" visa relief because she failed to exhaust her administrative remedies when she did not raise that issue, or any other issue, in response to ICE's Notice of Intent prior to being issued a FARO. Moreover, there is no basis in 8 U.S.C. § 1252 for this court to exercise jurisdiction over CIS' denial of Fonseca-Sanchez's petition for interim "U" visa relief. Accordingly, Fonseca-Sanchez's petition for review is DISMISSED.

A true Copy:

Teste:

_____

*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*