# In the

# United States Court of Appeals

## For the Seventh Circuit

Nos. 10-1411, 10-2532 & 10-3333

JUAN GABRIEL TORRES-TRISTAN,

*Petitioner*,

*v.*

ERIC H. HOLDER, JR., Attorney General
of the United States,

*Respondent.*

Petitions for Review of Orders of
the Department of Homeland Security.
No. A077-650-369

ARGUED JUNE 9, 2011—DECIDED SEPTEMBER 1, 2011

Before MANION, WOOD, and HAMILTON, *Circuit Judges.*

HAMILTON, *Circuit Judge.*  We consider three petitions
for review by a Mexican citizen who has been ordered
removed from the United States. The first petition, No. 10-
1411, seeks direct review of an order by the Department
of Homeland Security (DHS) reinstating an earlier order
of removal. We have jurisdiction over that petition, but
the order was clearly proper. We deny that petition on
its merits. The second and third petitions seek to create

a novel route to obtain, apparently for the first time in the circuit courts of appeals, judicial review of orders by U.S. Citizenship and Immigration Services (USCIS) that denied petitioner the "U Visa" he sought to prolong his unlawful stay in the United States. U Visas, which take their name from 8 U.S.C. § 1101(a)(15)(U), grant temporary lawful resident status to alien victims of crime who assist in an investigation or prosecution. We conclude that we lack jurisdiction over those petitions and dismiss them.

I. *Factual and Procedural Background*

Petitioner Juan Gabriel Torres-Tristan first entered the United States in 1993 as a minor. He became involved with the Latin Kings gang, and in 2000, he was serving an Illinois sentence for robbery and aggravated battery. The U.S. Immigration and Naturalization Service ordered him removed because he was in the United States illegally. The order was executed on July 20, 2001 when petitioner was removed to Mexico. Because he had been convicted of an aggravated felony, petitioner was prohibited from re-entering the United States without first seeking permission from the Attorney General waiving his inadmissible status. See 8 U.S.C. § 1182(a)(9)(A)(ii)-(iii).

Despite this prohibition, petitioner re-entered the United States without permission just three months later and returned to the Chicago area. A little over a year later, on December 7, 2002, and relevant to his U Visa petition, Torres-Tristan was assaulted by a group of

people he did not know. According to his 2010 U Visa petition, he was attacked while walking to a restaurant for dinner with a friend. The attackers beat him with bottles and bats and stole his vehicle. Petitioner was knocked unconscious and suffered injuries to his face and hands. In the days after the incident, he attended a police line-up but could not identify any of the attackers.

For seven more years, petitioner continued to live in the Chicago area with his fiancée and daughter, without any official attention to his illegal status. In January 2010, however, DHS officials arrested him and reinstated his prior order of removal from 2000. About six weeks later, while he remained in DHS custody, Torres-Tristan filed a petition with USCIS seeking a U Visa, which would grant him temporary lawful status based on the 2002 attack and his cooperation with the police at that time. Because the 2000 removal order made petitioner legally inadmissible to the United States and thus ineligible for a U Visa, he also applied for a waiver of his inadmissible status under 8 U.S.C. § 1182(d)(3) & (d)(14). USCIS denied both his U Visa petition and his waiver application, and then his later motion for reconsideration. Torres-Tristan has petitioned to review all of these actions.

II.  *Reinstatement of the 2000 Removal Order*

We turn first to the petition over which we have jurisdiction. Appeal No. 10-1411 seeks judicial review of the DHS's 2010 reinstatement of the removal order from 2000 pursuant to 8 U.S.C. § 1231(a)(5) and 8 C.F.R. § 241.8.

An alien subject to removal under a reinstated order does not have a right to a hearing before an immigration judge. See 8 U.S.C. § 1231(a)(5).[1] Rather, an immigration officer issues a "Notice of Intent/Decision to Reinstate Prior Order," which the alien may contest by making a written or oral statement to the officer at the time of issuance. 8 C.F.R. § 241.8(b) ("If the alien wishes to make such a statement, the officer shall allow the alien to do so and shall consider whether the alien's statement warrants reconsideration of the determination."). Under the statute, an alien who has not made a statement or whose statement has been rejected "shall be removed under the prior order at any time after the reentry" of the order of removal. 8 U.S.C. § 1231(a)(5).

In this case, petitioner Torres-Tristan did not contest the reinstatement order at the time it was issued. DHS took him into custody.[2] Torres-Tristan filed a timely petition for review of the reinstatement order pursuant to 8 U.S.C. § 1252. See also 8 U.S.C. § 1228(b)(3) (requiring

---

[1] This section provides in pertinent part: "If the Attorney General finds that an alien has reentered the United States illegally after having been removed or having departed voluntarily, under an order of removal, the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed, the alien is not eligible and may not apply for any relief under this chapter."

[2] Torres-Tristan pled guilty to criminal charges of illegal reentry in the Northern District of Illinois. The week before our oral argument, he was sentenced to 37 months in prison.

a 14-day delay in executing removal order to allow opportunity to apply for judicial review).

Judicial review of a reinstatement order extends only to whether the reinstatement order was properly entered. See *Gomez-Chavez v. Perryman*, 308 F.3d 796, 801 (7th Cir. 2002). We do not look behind the reinstatement to entertain challenges to the earlier, underlying removal order. *Id.* Petitioner Torres-Tristan concedes that he is the proper subject of the reinstatement order. He does not contest that he is removable for his criminal convictions, and he makes no meaningful argument on appeal to challenge the reinstatement. We deny the petition for review of the reinstatement order.

III. *Denial of a U Visa and Waiver of Inadmissibility*

On March 9, 2010, six weeks after the reinstatement of his prior removal order, and while he was in DHS custody, Torres-Tristan submitted to USCIS a petition for interim relief under 8 U.S.C. § 1101(a)(15)(U), the U nonimmigrant status provision. Congress created the U nonimmigrant classification or U Visa in 2000 for victims of serious crimes and some of their family members. See Pub. L. No. 106-386, 114 Stat. 1464 (2000); *Fonseca-Sanchez v. Gonzales*, 484 F.3d 439, 442 n.4 (7th Cir. 2007). Under the statute, a non-citizen is eligible for a U Visa if the Secretary of Homeland Security determines that he has suffered "substantial physical or mental abuse" as a result of qualifying criminal activity and that he has shown he "has been helpful, is being helpful, or is likely to be helpful" to law enforcement authorities in-

vestigating or prosecuting the crime. 8 U.S.C.
§ 1101(a)(15)(U)(i).[3]

In his U Visa petition, Torres-Tristan described his
attack and the injuries that resulted in 2002, as well as his
assistance in the police investigation that followed.
During its preliminary review of Torres-Tristan's peti-
tion, USCIS determined that he established prima facie
eligibility for a U Visa, meaning that he had properly
submitted the appropriate form and supporting
evidence and that the Chicago police department had
certified that he had provided the necessary assistance
for eligibility.[4]

---

[3] Petitioner refers several times in his brief to being "entitled"
to a U Visa. A person who meets the statutory criteria is only
eligible for such a visa, not entitled to one as a matter of right.
The relevant statutes and regulations leave the final decision
to the discretion of DHS. See 8 U.S.C. § 1101(a)(15)(U) (the
Secretary of Homeland Security determines whether peti-
tioner has fulfilled statutory criteria); 8 C.F.R. § 214.14(c)(4)
(giving USCIS "sole discretion" to determine the "evidentiary
value" of the materials submitted by a petitioner); 8 C.F.R.
§ 214.14(c)(5)(i) ("If USCIS determines that the petitioner has
met the requirements for U-1 nonimmigrant status, USCIS
will approve Form I-918.").

[4] Although Torres-Tristan met the minimum statutory criteria,
it is difficult to see how granting his 2010 U Visa petition
could have served the purposes of the program. Even if he
could provide information that would actually be useful in
investigating and prosecuting the 2002 crime, the statute of
limitations had expired several years earlier.

There was a more basic problem, though. An alien is eligible for a U Visa only if he is admissible to the United States or if all grounds of inadmissibility have been waived. See 8 C.F.R. § 214.1(a)(3)(i). When petitioner Torres-Tristan sought a U Visa, he was inadmissible to the United States on four independent grounds under 8 U.S.C. § 1182: he had been convicted of a crime involving moral turpitude; he was an alien previously removed and was not arriving in the country; he was an alien present without being admitted; and, he was a non-immigrant without a valid passport.

To overcome those obstacles, Torres-Tristan also filed an application for a discretionary waiver of his inadmissible status. After USCIS requested that petitioner provide additional materials supporting his waiver application, he submitted dozens of letters, medical records, and police reports. These materials laid out a case for waiver, claiming that he had reformed from his criminal past, he was committed to his family, his fiancée had serious health problems, and he had been steadily employed since his last illegal re-entry.

In two letters dated June 3, 2010, USCIS denied both Torres-Tristan's U Visa petition and his waiver application. In its letter denying the waiver application, USCIS stated that federal regulations "allow[ ] the Service to exercise discretion and waive the ground of inadmissibility, if it is in the national interest." His waiver application was denied "as a matter of discretion" because USCIS found that his claim was "not sufficiently persuasive." The letter also noted that Torres-Tristan did

not make "any formal argument that the waiving of [his] inadmissibility ground would be in the national or public interest." The second letter denied Torres-Tristan's petition for a U Visa because, without a waiver of inadmissibility, Torres-Tristan was not eligible for a U Visa. USCIS also denied Torres-Tristan's later motion for reconsideration.

On June 24, 2010, Torres-Tristan filed a second petition in this court (No. 10-2532) for review of USCIS's denials of his U Visa petition and waiver application, and on October 6, he filed a third petition (No. 10-3333) for review of USCIS's denial of his motion for reconsideration. All three petitions for review were consolidated for briefing and argument.

We must first address the threshold legal question whether we may exercise jurisdiction to review the denials of the waiver of inadmissibility and the U Visa. Torres-Tristan contends that we may exercise jurisdiction to review both denials under 8 U.S.C. § 1252(a), which authorizes judicial review of "a final order of removal." We begin with the petitioner's waiver application because his eligibility for a U Visa depends on whether he can obtain a discretionary waiver of his inadmissible status. See 8 C.F.R. §§ 214.1(a)(3)(i), 214.14(c)(2)(iv) (inadmissible U Visa petitioners must submit an application for a waiver of inadmissibility as part of their "initial evidence"). We conclude that we lack jurisdiction over the denial of a waiver of inadmissibility because that denial was collateral to the DHS order reinstating the earlier removal order.

In 2007, DHS issued 8 C.F.R. § 212.17, addressing inadmissible U Visa petitioners like Torres-Tristan. Section 212.17 describes how to file an application for a waiver of inadmissible status (an "I-192" waiver), how DHS treats such applications, and how DHS may revoke "a waiver previously authorized." In cases like this one, where the petitioner has a record of violent or dangerous crimes, the regulation states that "USCIS will only exercise favorable discretion in extraordinary circumstances." 8 C.F.R. § 212.7(b)(2). Paragraph (b)(3) of the regulation is clear: "There is no appeal of a decision to deny a waiver." 8 C.F.R. § 212.17(b)(3). The introductory notes of the regulation further state: "As with inadmissibility waiver applications for other nonimmigrant classifications, there is no appeal of a decision to deny Form I-192." New Classification for Victims of Criminal Activity; Eligibility for "U" Nonimmigrant Status, 72 Fed. Reg. 53,014 (Sept. 17, 2007), at 53,022.

To avoid this clear roadblock, Torres-Tristan seeks to obtain judicial review of the waiver denial under the jurisdictional umbrella of his meritless challenge to the 2010 reinstatement of the 2000 removal order. This would be an unprecedented expansion of our very limited judicial review of the reinstatement. We lay out petitioner's argument and explain our rejection of it.

Under 8 U.S.C. § 1252, this court's jurisdiction over immigration removal orders is limited to review of "a final order of removal." 8 U.S.C. § 1252(a)(1), (a)(5). The term, "final order of removal," includes "not only the actual order of deportation, but all orders closely related to the

deportation proceeding . . . and entered during the proceeding, such as an order denying voluntary departure or an adjustment of status." *Carvajal-Munoz v. INS*, 743 F.2d 562, 566 (7th Cir. 1984), citing *Foti v. INS*, 375 U.S. 217, 220-23 (1963). Ancillary determinations made outside the context of a removal proceeding, however, are not subject to direct review. *Fonseca-Sanchez*, 484 F.3d at 444. Only matters "intimately associated and immediately associated" with the final order or "governed by the regulations applicable to the deportation proceeding itself, and . . . ordinarily presented to the special inquiry officer [immigration judge] who entered the deportation order fall within the ambit of direct appellate review." *Carvajal-Munoz*, 743 F.2d at 566, quoting *Cheng Fan Kwok v. INS*, 392 U.S. 206, 217 (1968) (quotation marks omitted), superseded in part by amendments to 8 U.S.C. § 1252(b)(9).

These holdings would seem to resolve the matter here with respect to the denial of Torres-Tristan's waiver application. USCIS's denial of petitioner's waiver application was a decision separate and apart from the final order of removal. As an ancillary determination, the waiver denial does not fall within the purview of orders over which we may exercise jurisdiction pursuant to 8 U.S.C. § 1252.

Because petitioner requires a waiver of his inadmissible status in order to apply for U Visa, we could conclude our inquiry here. But Torres-Tristan urges us to review his U Visa petition and waiver application denials together. We remain unpersuaded. In *Fonseca-Sanchez*,

we held that we lacked jurisdiction to review a denial of a U Visa petition as part of a review of a final administrative removal order under the same principles noted above. 484 F.3d at 444-45. Like Torres-Tristan, Fonseca-Sanchez was subject to expedited removal after being convicted of an aggravated felony. On the basis of our holding in that case, Torres-Tristan would appear to be precluded from seeking review of the denial of his U Visa petition, as well.

To avoid the precedential effect of *Fonseca-Sanchez*, Torres-Tristan relies on new language in the U Visa regulations issued in November 2009 and on the Supreme Court's decision in *INS v. Chadha*, 462 U.S. 919 (1983). The regulation, 8 C.F.R. § 214.14(c)(5)(i), states in part that when a U Visa is granted to a person who is subject to a removal order issued by the Secretary of Homeland Security, "the order will be deemed canceled by operation of law." In *Chadha*, the Supreme Court held that section 1252 provides direct review for "all matters on which the validity of the final [removal] order is contingent." 462 U.S. at 938. As Torres-Tristan views things, the new regulation makes the ongoing validity of his removal order contingent on the outcome of his U Visa petition. Under the rule stated in *Chadha*, he contends, the new regulation gives this court the power to review both USCIS denials under section 1252.

We disagree. The "canceled by operation of law" provision in the U Visa regulation is an unlikely means for accomplishing an improbable and unprecedented result. We reach this conclusion for three principal reasons.

First, the proposed result would create a path to judicial review for a narrow class of U Visa denials: only denials involving aliens who are subject to an order of exclusion, deportation, or removal issued by the Secretary of Homeland Security, but not those who have been ordered removed by an immigration judge. See 8 C.F.R. § 214.14(c)(5)(i). Providing judicial review for that narrow group of beneficiaries seems like an improbable result at best. We have not been shown any persuasive reason to think that the one group, subject to expedited removal proceedings under orders by the Secretary of Homeland Security, should be given this special treatment for a highly discretionary decision that would not otherwise be subject to review by the circuit courts of appeals.

Second, judicial review in the circuit courts of appeals of U Visa denials (even apart from the denial of waiver of inadmissibility) would appear to be unprecedented. Our decisions reflect a longstanding practice of not reviewing visa denials in general and not reviewing them as part of removal orders. See, *e.g.*, *Conti v. INS*, 780 F.2d 698, 702 (7th Cir. 1985) (finding that collateral matters, such as those regarding disposition of a visa application, were not subject to the court's jurisdiction); *De Figueroa v. INS*, 501 F.2d 191,194 (7th Cir. 1974) ("We say collateral because the matter relating to the approval and withdrawal of visa petitions is not within the scope of a deportation proceeding."); *Carino v. INS*, 460 F.2d 1341, 1344 (7th Cir. 1972) (concluding that statute granting jurisdiction to the court over removal orders did not confer jurisdiction over visa matter); *Abu-*

*Sammour v. Mukasey*, 312 F. App'x 813, 815 (7th Cir. 2008) (declining jurisdiction over the denial of an immediate relative visa petition); *Al-Marbu v. Keisler*, 248 F. App'x 748, 751-52 (7th Cir. 2007) (declining jurisdiction over denial of an S Visa petition).

Turning more specifically to U Visas, we have already referred to our decision in *Fonseca-Sanchez*, rejecting section 1252 review of a U Visa denial. The Ninth, D.C., and Eleventh Circuits have also held that judicial review is not available for denial of a U Visa. See *Chang Young Jung v. Holder*, 393 F. App'x 530 (9th Cir. 2010); *Eun Kyeong Seo v. Holder*, 358 F. App'x 884 (9th Cir. 2009); *Semiani v. United States*, 575 F.3d 715 (D.C. Cir. 2009) ("Congress has not provided for judicial review of decisions to deny a 'U Visa'"); *Bejarano v. DHS*, 300 F. App'x 651, 653 (11th Cir. 2008) (same). We have not found any contrary authority.

Third, the "canceled by operation" sentence in the regulation is a very unlikely means for accomplishing the proposed result. If judicial review for this unusual and narrow set of denied applicants for U Visas were intended, we would expect the indication of that intent to be much more explicit. In context, the sentence seems much more like a matter of administrative convenience to keep one office of the DHS from undoing what another has done when a U Visa is actually granted. The sentence in 8 C.F.R. § 214.14 is part of a larger subsection (c) that establishes the procedure for applying for a U Visa. Subsection (c)(1)(ii) includes instructions for applicants like Torres-Tristan who are

subject to final removal orders. It points out (a) that such aliens may apply for U Visas, but (b) that an application has no effect on Immigration and Customs Enforcement's authority to execute a final order, while (c) a stay of execution may be available. The "canceled by operation of law" sentence is part of (c)(5)(i), which addresses the bureaucratic details, and not of a denial but of a grant of a U Visa.[5] The first sentence explains that USCIS will grant the visa by approving Form I-918. The second sentence applies to successful petitioners who are in the United States, who will receive an order granting the visa. The third sentence, the one Torres-

---

[5]  The entire paragraph (c)(5)(i) reads:

Approval of Form I-918, generally. If USCIS determines that the petitioner has met the requirements for U-1 nonimmigrant status, USCIS will approve Form I-918. For a petitioner who is within the United States, USCIS also will concurrently grant U-1 nonimmigrant status, subject to the annual limitation as provided in paragraph (d) of this section. For a petitioner who is subject to an order of exclusion, deportation, or removal issued by the Secretary, the order will be deemed canceled by operation of law as of the date of USCIS' approval of Form I-918. A petitioner who is subject to an order of exclusion, deportation, or removal issued by an immigration judge or the Board may seek cancellation of such order by filing, with the immigration judge or the Board, a motion to reopen and terminate removal proceedings. ICE counsel may agree, as a matter of discretion, to join such a motion to overcome any applicable time and numerical limitations of 8 CFR 1003.2 and 1003.23.

Tristan relies on, explains what to do with successful petitioners subject to a DHS removal order: "For a petitioner who is subject to an order of exclusion, deportation, or removal issued by the Secretary, the order will be deemed canceled by operation of law as of the date of USCIS' approval of Form I-918." The fourth sentence addresses other successful petitioners subject to removal orders issued by an immigration judge or the Board of Immigration Appeals: they may seek cancellation of the order before the judge or the Board. And the fifth sentence notes that ICE counsel may decide, as a matter of discretion, to join in such a request. In other words, the sentence Torres-Tristan relies on is addressed to successful petitioners, not unsuccessful ones, and provides an unlikely vehicle for producing the odd result he seeks.

More relevant here would be subsection (c)(5)(ii), which addresses *denials* of U Visa petitions. That provision allows for appeal to the Administrative Appeals Office, but Torres-Tristan did not take that route. The regulation then provides for petitioners who were subject to final removal orders, but who (unlike Torres-Tristan) obtained a stay of the order pending a decision on the U Visa: "For petitioners who are subject to an order of removal, deportation, or exclusion and whose order has been stayed, USCIS' denial of the petition will result in the stay being lifted automatically as of the date the denial becomes administratively final." 8 C.F.R. § 214.14(c)(5)(ii). That automatic effect appears to be simply another bureaucratic mechanism to keep different offices of DHS headed in the

same direction. Nothing in the provisions for denial of U Visa petitions suggests that such a petitioner can avoid the Administrative Appeals Office and go straight to a circuit court to hear an independent petition for review of a removal order.

We are not persuaded by petitioner's reliance on *INS v. Chadha* to achieve the improbable result he proposes. The principal constitutional issue in *Chadha* was the one-house legislative veto, which had been exercised to order the INS to issue an order to remove Mr. Chadha, even though INS had permitted him to remain in the United States. The jurisdiction to hear his challenge was clear: he was challenging a final order of removal. The only novelty was that the existence of the order depended on the constitutionality of the one-house veto. There was nothing at all collateral about his challenge to the one-house veto — it was the action that triggered the order. Allowing judicial review in that circumstance provides no guidance for denial of an unrelated visa petition and waiver application through a procedure entirely separate from and independent of the reinstatement of his removal order and not otherwise subject to review. Nothing in the Supreme Court's *Chadha* opinion suggests that its language was intended to broaden the scope of judicial review to consider such collateral visa matters as part of the review of a removal order. See 462 U.S. at 937-38.

Torres-Tristan's reliance on the Ninth Circuit's decision in *Morales-Izquierdo v. DHS*, 600 F.3d 1076 (9th Cir. 2010), is also not persuasive. There, the alien, also

a citizen of Mexico, had been previously removed from
the United States and re-entered illegally, so that he
was inadmissible. He applied to adjust his status to
become a lawful permanent resident, which would
have required a discretionary waiver of inadmissibility.
While his application was pending, the INS reinstated
the earlier order of removal, which rendered him (like
Torres-Tristan here) ineligible for "any relief" that might
have been available. See 8 U.S.C. § 1231(a)(5). Morales-
Izquierdo's application to become a lawful permanent
resident was denied. He sought judicial review by filing
a petition for a writ of habeas corpus in a district court.
The district court denied the petition, and the Ninth
Circuit affirmed, relying on the "zipper clause" in 8
U.S.C. § 1252(b)(9), which removed habeas corpus juris-
diction from the district court:

> Judicial review of all questions of law and fact, in-
> cluding interpretation and application of constitu-
> tional and statutory provisions, arising from any
> action taken or proceeding brought to remove an
> alien from the United States under this subchapter
> shall be available only in judicial review of a final
> order under this section. Except as otherwise pro-
> vided in this section, no court shall have jurisdic-
> tion, by habeas corpus under section 2241 of Title 28
> or any other habeas corpus provision, by section
> 1361 or 1651 of such title, or by any other provision
> of law (statutory or nonstatutory), to review such
> an order or such questions of law or fact.

The Ninth Circuit relied on *Chadha* to conclude that the
link between Morales-Izquierdo's reinstated removal

order and his application for adjustment of status was so close that the application was covered by the zipper clause: his challenge to the adjudication of his adjustment-of-status application was appropriately characterized as a challenge to an "order of removal." The court noted that "if Morales were granted the relief he seeks in the present habeas corpus petition — a nunc pro tunc Form I-212 waiver of inadmissibility and the adjustment of status to that of [a legal permanent resident] — the Reinstatement Order would be rendered invalid." 600 F.3d at 1082-83.[6]

Although Torres-Tristan likens Morales-Izquierdo's application to become a lawful permanent resident to his own U Visa petition, we find them distinguishable. The process for obtaining relief pursuant to an adjustment-of-status application differs from the U Visa process, and

---

[6] The Second Circuit followed the Ninth Circuit's approach in *Delgado v. Quarantillo*, 643 F.3d 52 (2d Cir. 2011), concluding that a petition for review of a denial of a waiver of inadmissibility in anticipation of an adjustment of status was an indirect challenge to petitioner's reinstated order of removal. Delgado's petition, like that of Morales-Izquierdo, concerned an adjustment-of-status application along with an I-212 waiver of inadmissibility that USCIS denied. She brought her claim to the Southern District of New York which found that it lacked jurisdiction. The court of appeals agreed without identifying precisely what avenues of relief were available to the petitioner. In light of the differences in posture and substance, we see little practical application of the Second Circuit's conclusions to this case.

the statutes and regulations treat the relevant waivers for each type of relief differently. The Ninth Circuit based its conclusion in *Morales-Izquierdo* in large part on an "inextricable link" between the adjustment-of-status challenge and the removal order resulting from the statutory framework governing adjustment of status at the time, whereby Morales-Izquierdo was not eligible for any relief as long as the order stood. See 600 F.3d at 1082.[7] On the basis of that link, the court aggregated the denials of Morales-Izquierdo's waiver and adjustment applications in the review of his reinstated removal order.

There is no such link here. U Visa petitioners file a different type of application for a waiver (a Form I-192) subject to its own process of consideration and, most important, they may do so without regard for an outstanding removal order. See 8 C.F.R. § 214.14(c)(1)(ii). Unlike the petitioner in *Morales-Izquierdo*, Torres-Tristan could be eligible for U Visa relief notwithstanding the removal order.[8] These differences in the applicable

---

[7] Morales-Izquierdo had applied for relief two years prior to the reinstatement of his removal order. Once the reinstatement order had issued, he was no longer eligible for any relief, see 8 U.S.C. § 1231(a)(5), though he reapplied the following year and also filed an application to waive his inadmissibility for the first time.

[8] Although, as a removed alien who re-entered illegally, Torres-Tristan was also subject to 8 U.S.C. § 1231(a)(5) barring him from "any relief," the government acknowledges that it
(continued...)

statutes and regulations governing the case before us as compared to those presented to the Ninth Circuit lead us to decline to adopt and then extend the *Morales-Izquierdo* reasoning here.[9]

Moreover, the Ninth Circuit did not take up the specific issue before us in this case: whether the denials of a Form I-192 waiver and discretionary visa are part of a reviewable order of removal. The question before the court in *Morales-Izquierdo* was whether petitioner could bring a habeas action in the district court challenging the denial of his Form I-485 adjustment-of-status application — not whether there was appellate review under section 1252. The court offered no relief to the petitioner in that case, saying that his habeas corpus approach would turn on its head the expedited, summary reinstatement of removal orders. We have likewise recognized the "zipper clause" to be a "jurisdictional limitation," and not a "grant" of jurisdiction, designed to "consolidate certain questions in one petition for review." See *Levya v. Ashcroft*, 380 F.3d 303, 306-07 (7th Cir. 2004) (finding that the zipper clause did not

---

[8] (...continued)
did not reject petitioner's U Visa application based on this statutory bar.

[9] Also, as noted above, like other circuits, the Ninth Circuit has consistently found that it lacks jurisdiction over U Visa denials. See, *e.g.*, *Chang Young Jung v. Holder*, 393 F. App'x 530 (9th Cir. 2010); *Eun Kyeong Seo v. Holder*, 358 F. App'x 884 (9th Cir. 2009).

provide an independent basis for jurisdiction that would overcome the jurisdictional bar in section 1252).

The same reasoning applies here. The rule Torres-Tristan advocates here would, if adopted, create a new opportunity for an inadmissible alien subject to expedited removal to slow down the entire process by applying for a U Visa and a waiver of inadmissibility, and then to seek and obtain judicial review of those denials, no matter how weak the applications and challenges might be. See generally *Kashani v. Nelson*, 793 F.2d 818, 824-25 (7th Cir. 1986) (acknowledging congressional intent to expedite and consolidate review). We do not have jurisdiction to review the denial of Torres-Tristan's application for a waiver of inadmissibility or his petition for a U Visa.[10]

IV. *The Denial of Reconsideration*

Last, we need not address the parties' arguments regarding USCIS's dismissal of Torres-Tristan's motion to reopen/reconsider its prior decision on his Form I-192.

---

[10] Nothing in our opinion forecloses the possibility that a petitioner who exhausted administrative remedies might be able to seek review in a federal district court through another means, such as under the Administrative Procedure Act, Pub. L. No. 79-404, 60 Stat. 237 (1946), as we acknowledged in *Fonseca-Sanchez*. 484 F.3d at 445. Under the governing 2009 U Visa regulations, however, the pendency of those proceedings would not affect the execution of a standing removal order. See 8 C.F.R. § 214.14(c)(1)(ii).

Lacking jurisdiction to consider the underlying issue, we similarly lack jurisdiction to evaluate the merits of Torres-Tristan's motion for reconsideration. See *Zamora-Mallari v. Mukasey*, 514 F.3d 679, 694 (7th Cir. 2008) (where Congress specifically withdraws this court's jurisdiction to review a final order, the court's authority to review motions to reconsider is also withdrawn). We dismiss the third petition for review, No. 10-3333, for lack of jurisdiction.

Accordingly, the petition for review in No. 10-1411 is DENIED, and the petitions for review in No. 10-2532 and No. 10-3333 are DISMISSED for lack of jurisdiction, without reaching the merits.