In the

# United States Court of Appeals

## For the Seventh Circuit

No. 18-2886

VICTOR MARTIN VILLA SERRANO,

*Petitioner,*

*v.*

WILLIAM P. BARR, Attorney General
of the United States,

*Respondent.*

On Petition for Review of a Final Removal Order
of the U.S. Department of Homeland Security.
A073 360 777

ARGUED MARCH 26, 2019 — DECIDED MAY 9, 2019

Before BAUER, ROVNER, and BRENNAN, *Circuit Judges*.

ROVNER, *Circuit Judge.* In 2007, Victor Martin Villa Serrano ("Villa") reentered the United States after having been removed in 2005. When he came to the attention of the government in 2018, a deportation officer for U.S. Immigration and Customs Enforcement ("ICE") determined that Villa had

illegally reentered the United States and was subject to reinstatement of the prior removal order. Villa raises a few legal challenges to that conclusion, primarily contending that there is no lawful prior order of removal because the original "Notice to Appear" was legally deficient and the immigration judge therefore lacked jurisdiction to enter the order of removal. Because we lack jurisdiction to review the underlying order of removal, we dismiss the petition for review.

## I.

Villa, a native and citizen of Mexico, originally entered the United States in March 1988 without inspection or admission by an immigration officer. He adjusted his status to that of a lawful permanent resident in August 1995. Approximately nine years later, he was convicted in state court of possession of cocaine, and sentenced to a year in prison. On January 12, 2005, the Department of Homeland Security ("DHS") initiated removal proceedings against Villa by serving him with a Notice to Appear ("Notice"). The Notice charged that he was subject to removal under 8 U.S.C. § 1227(a)(2)(A)(iii) because, after admission, he had been convicted of an aggravated felony as defined in 8 U.S.C. § 1101(a)(43)(B). The Notice directed him to appear before an immigration judge and listed an address for the hearing. But on the pre-printed lines for "date" and "time," the Notice provided only "on a date to be set," and "at a time to be set." Admin. R. at 23–25.

Villa does not dispute that the Immigration Court later served on him a Notice of Hearing that specified the date and time of his first hearing. On February 9, 2005, he appeared at the removal hearing and the immigration judge entered an

order of removal. Villa waived his right to appeal that decision and a few weeks later, he was removed to Mexico. The record contains no corroboration of when, how or where he reentered the United States, but according to Villa, he returned sometime in 2007, crossing the border on foot at an unspecified location. After reentering, he did not come to the attention of immigration authorities until 2018. On July 31 of that year, DHS served him with a Notice of Intent/Decision to Reinstate Prior Order of Removal ("Decision to Reinstate"). Citing 8 U.S.C. § 1231(a)(5) and 8 C.F.R. § 241.8 as authority, the Decision to Reinstate apprised Villa that DHS intended to reinstate the February 9, 2005 removal order ("2005 Order") because Villa had illegally reentered the United States on an unknown date at an unknown place after previously having been removed. The Decision to Reinstate advised Villa that he could contest the determination that he was removable under the prior order by making an oral or written statement but that he was not entitled to a hearing before an immigration judge. Thereafter, Villa filed this petition for review.

## II.

In his Petition for Review, Villa contends that the 2005 Order was void because it was entered *ultra vires*, and therefore may not be reinstated under 8 U.S.C. § 1231(a)(5). He also argues that the 2005 removal proceedings under 8 U.S.C. § 1229a were never properly initiated and that subject matter jurisdiction failed to vest with the immigration judge because his Notice to Appear did not contain all of the required information. He bases his arguments largely on the Supreme Court's recent decision in *Pereira v. Sessions*, 138 S. Ct. 2105 (2018). The government responds that this court lacks jurisdic-

tion to consider any challenges to an underlying removal order in a reinstatement case, and that, in any event, Villa failed to timely challenge the 2005 Order and failed to exhaust administrative remedies. By the government's count, there are at least three bars to this court considering the validity of the 2005 Order. The government also asserts that, if Villa were able to overcome those bars to review, his claim would fail on the merits.

We have the authority and the obligation in every case to assess our own jurisdiction, and we undertake this review *de novo*. *Muratoski v. Holder*, 622 F.3d 824, 829 (7th Cir. 2010); *Gattem v. Gonzales*, 412 F.3d 758, 762 (7th Cir. 2005). The statute providing for reinstatement of prior orders of removal specifies:

> If the Attorney General finds that an alien has reentered the United States illegally after having been removed or having departed voluntarily, under an order of removal, *the prior order of removal* is reinstated from its original date and *is not subject to being reopened or reviewed*, the alien is not eligible and may not apply for any relief under this chapter, and the alien shall be removed under the prior order at any time after the reentry.

8 U.S.C. § 1231(a)(5) (emphasis added). Under the plain language of this provision, we lack jurisdiction to review the underlying prior order of removal, in this case, the 2005 Order. *Cordova-Soto v. Holder*, 732 F.3d 789, 793 (7th Cir. 2013); *Torres-Tristan v. Holder*, 656 F.3d 653, 656 (7th Cir. 2011). *See also Fernandez-Vargas v. Gonzales*, 548 U.S. 30, 34–35 (2006) (the

current version of the reinstatement statute provides for the broadest use of reinstatement, applying to all illegal reentrants, and explicitly insulating removal orders from review, while also generally foreclosing discretionary relief from the terms of the reinstatement order); *Mendoza v. Sessions*, 891 F.3d 672, 679 (7th Cir. 2018) (same).

We do, however, have jurisdiction to consider the reinstatement order itself. *Torres-Tristan*, 656 F.3d at 656; 8 U.S.C. § 1252(a). "Judicial review of a reinstatement order extends only to whether the reinstatement order was properly entered." *Torres-Tristan*, 656 F.3d at 656. Reinstatement procedures are limited in scope. *Gomez-Chavez v. Perryman*, 308 F.3d 796, 801 (7th Cir. 2002). In determining whether an alien is subject to removal by reinstatement, the immigration officer must determine:

> (1) Whether the alien has been subject to a prior order of removal. The immigration officer must obtain the prior order of exclusion, deportation, or removal relating to the alien.

> (2) The identity of the alien, i.e., whether the alien is in fact an alien who was previously removed, or who departed voluntarily while under an order of exclusion, deportation, or removal. …

> (3) Whether the alien unlawfully reentered the United States. …

8 C.F.R. § 241.8(a). *See also Gomez-Chavez*, 308 F.3d at 801 (to enter an order reinstating a prior order, the DHS must determine: the identity of the alien; whether he or she was subject to

a prior removal order; and the terms on which he or she left and reentered the country).

In this case, the immigration officer obtained the 2005 Order under which Villa was previously removed, determined that Villa was the same person who had been removed under that Order, and then determined that Villa had unlawfully reentered the United States. Indeed, Villa does not dispute that he is the alien referenced in the 2005 Order, that he was purportedly subject to removal under the 2005 Order, that he previously was removed under that Order, and that he reentered without a lawful basis. He contends, nevertheless, that the 2005 Order was void from its inception, and the immigration judge had no jurisdiction to enter it. He argues, in essence, that the 2005 Order may not be reinstated because there is no valid prior order to reinstate.

In order to avoid the jurisdictional bar that is patent in the statute, Villa argues that he "does not seek review of an unreviewable removal order," but rather requests that "the Court recognize no valid order ever existed." Brief of Petitioner, at 6. He suggests that "there is no underlying removal order because removal proceedings under 8 U.S.C. § 1229a never took place." Brief of Petitioner at 7. *See also* Reply Brief at 2 (where Villa contends that he "is not requesting the Court review an old order on its merits," but instead "challenges whether there is actually a prior removal order against him."). Villa is not claiming that the 2005 Order literally does not exist but rather is arguing that it is not valid and never was valid

because of defects in the Notice to Appear.[1] This circular argument asks the court to bypass the jurisdictional bar on reviewing underlying orders in reinstatement proceedings by reviewing the underlying order and finding it void. We decline this invitation.

Villa relies on this court's opinion in *Mejia Galindo v. Sessions*, 897 F.3d 894 (7th Cir. 2018), for the proposition that, even in a case where we lack jurisdiction to review an order of removal, we have the power to unwind a legal error that created the jurisdictional defect. Villa overreads *Mejia Galindo*, which is distinguishable on a number of grounds. In that case, an immigration judge found that Mejia Galindo was not removable and declined to enter an order of removal. The government appealed to the Board of Immigration Appeals ("BIA" or "Board"), which reversed and found that Mejia Galindo was removable. But instead of remanding for the immigration judge to enter an order of removal, the BIA purported to enter an order of removal on its own authority. Mejia Galindo then timely petitioned this court for review of the BIA's order. 897 F.3d at 895–96. We noted our jurisdiction to review final orders of removal under 8 U.S.C. § 1252(a)(1), but we found that the Board lacked any statutory or regulatory authority to enter a removal order in the first instance. Because

---

[1] Villa attached the purportedly void 2005 Order to his opening brief. He does not dispute that an immigration judge held a hearing and entered an order; he asserts instead that defects in the Notice to Appear deprived the immigration judge of jurisdiction to hold the hearing and enter the order, rendering the order void from its inception, a conclusion which is impossible to reach without reviewing the 2005 Order and the proceedings that led to its entry.

there was no final order of removal, we lacked jurisdiction to review the merits of the BIA's order. 897 F.3d at 897–98. But we also found that our jurisdiction to consider our own jurisdiction included the authority to vacate the BIA's decision and remand the matter to address the legal error that gave rise to the jurisdictional limitation in the first place. 897 F.3d at 898. Without that authority, Mejia Galindo would have been without any remedy in the face of the BIA's *ultra vires* act.

Unlike Villa, Mejia Galindo filed his petition in a timely manner soon after the Board entered its *ultra vires* order. Villa waited thirteen years to challenge the 2005 Order, well beyond the time allotted. *See* 8 U.S.C. § 1252(b)(1) ("The petition for review must be filed not later than 30 days after the date of the final order of removal."). Unlike Villa, Mejia Galindo did not unlawfully return to the United States after having been removed. Villa did return after previously having been removed, and now brings his challenge in the context of a reinstatement proceeding, where our jurisdiction is statutorily limited to review of the circumstances of reinstatement. Unlike Mejia Galindo, Villa did have other remedies available to him, remedies that he bypassed by not pursuing them in a timely fashion in 2005 when the order of removal was first entered. Villa's case is in this posture because of his unlawful reentry, not because of circumstances beyond his control, as happened to Mejia Galindo. Our reasoning in *Mejia Galindo* has no application to the circumstances here.

Because we have no jurisdiction to review the underlying order in reinstatement proceedings, we must dismiss this appeal. We noted above that Villa's challenge to the underlying 2005 Order was also untimely under 8 U.S.C. § 1252(b)(1).

His claim is also precluded by his failure to exhaust administrative remedies under 8 U.S.C. § 1252(d)(1). For the sake of completeness, we will briefly address the applicability of *Pereira* to the circumstances here.

In *Pereira*, the Supreme Court considered the narrow question of whether a notice to appear that does not specify the "time and place at which the proceedings will be held," as required by § 1229(a)(1)(G)(i), triggers the stop-time rule. 138 S. Ct. at 2113. The Attorney General has discretion to cancel removal and adjust the status of certain nonpermanent residents who meet enumerated criteria, including a requirement to be continually physically present in the United States for not less than ten years immediately preceding the date of an application for cancellation of removal. Under the stop-time rule, the period of continuous presence is deemed to end when an alien is served with a notice to appear "under section 1229(a)" *Pereira*, 138 S. Ct. at 2110; 8 U.S.C. §§ 1229(a) (setting forth the form for a notice to appear); 1229a (governing removal proceedings); 1229b (governing cancellation of removal and adjustment of status). Because section 1229(a) requires a notice to appear to list the date and time for the first hearing, the Court concluded that a notice to appear that did not contain the date and time information is not a "notice to appear *under* section 1229(a)" and so does not trigger the stop-time rule under 8 U.S.C. § 1229b(d)(1)(A). 138 S. Ct. at 2113–14 (emphasis added).

Villa seeks to employ *Pereira's* narrow holding from the context of the stop-time rule more broadly to assert that, because his Notice to Appear did not list the date and time of his hearing, his Notice to Appear did not vest the immigration

court with jurisdiction over his case, and any order entered was therefore void. Many years before the Court decided *Pereira,* we rejected the contention that the failure to include the date and time in a notice to appear deprives the immigration court of jurisdiction so long as the immigration court serves notice of the time and date on the person named in the notice to appear. *Dababneh v. Gonzales,* 471 F.3d 806, 809 (7th Cir. 2006) (that the government fulfilled its obligations under 8 U.S.C. § 1229 in two documents rather than one did not deprive the immigration judge of jurisdiction to initiate removal proceedings). Following *Pereira,* the BIA rejected the very argument raised here by Villa in *Matter of Bermudez-Cota,* 27 I. & N. Dec. 441 (BIA 2018). Also after the decision in *Pereira,* the Second, Sixth and Ninth Circuits have concluded that jurisdiction vests with the immigration court where the mandatory information about the time and date of the hearing is absent from the Notice to Appear but is provided later in a notice of hearing issued by the immigration court. *Banegas Gomez v. Barr,* — F.3d —, 2019 WL 1768914, \*6–\*8 (2d Cir. Apr. 23, 2019); *Hernandez-Perez v. Whitaker,* 911 F.3d 305, 314–15 (6th Cir. 2018); *Karingithi v. Whitaker,* 913 F.3d 1158, 1160–61 (9th Cir. 2019). Together with *Dababneh,* these cases suggest that the immigration judge did have jurisdiction over Villa's 2005 proceedings, that the entry of the 2005 Order was not *ultra vires,* and that the 2005 Order was therefore not void. But because we lack jurisdiction to review the 2005 Order, we have no occasion to reconsider *Dababneh* in light of *Pereira,* and so we reserve that issue for a case in which it matters to the outcome.

PETITION DISMISSED.